**Application of Daiil PARK, for Admission to the Alaska Bar Association.**
**No. 1318.**

Supreme Court of Alaska.
April 30, 1971.

Russell J. Gallagher, William M. Erwin, and Robert C. Erwin, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for petitioner.

Mary F. LaFollette, Anchorage, for the Bd. of Governors of the Alaska Bar Association.

Before BONEY, C. J., and DIMOND, RABINOWITZ and CONNOR, JJ.

## OPINION

DIMOND, Justice.

The Alaska Bar Association refused to certify petitioner for admission to practice law in Alaska. He has petitioned this court for admission, over opposition by the bar association.

Petitioner passed the Alaska bar examination in March 1970. He has complied with all other requirements for admission except one—he is not a citizen of the United States, which is a prerequisite to admission to practice law in Alaska under AS 08.08.130(a) [1] and Alaska Bar Rule II.[2]

In Application of Houston [3] we held that the "inherent and final power and authority to determine the standards for admission to the practice of law" in Alaska resided in the supreme court. Further, we defined the legislature's role as follows:

> In adopting the majority rule, we recognize that the legislature may enact laws governing admission to practice law *but hold that it may not require this court*

*to admit on standards other than those accepted or established by the court.* [Emphasis added.]

This doctrine is neither novel [4] nor unaccepted.[5] It is merely recognition of the doctrine of the separation of powers.[6]

Respondent argues that while the above is true, petitioner's claim is invalid because the citizenship standard is, in the language of *Houston,* "accepted or established by the court." Respondent points to Bar Rule II, section 1, as indicative of this court's acceptance of the requirement. Petitioner, in reply, asks this court to "review in depth" the citizenship requirements of Rule II and of AS 08.08.130, under its inherent authority to regulate the practice of law in Alaska. We agree with petitioner that such a review is appropriate at this time.

The standard of our review in such cases—that is, where the legislature has adopted qualifications for the practice of law—was set out clearly in Application of Brewer:[7]

> Whether or not we accept legislative standards or rules for admission to the practice of law depends on whether they have a *rational connection with one's fitness to practice law in Alaska.* We will hold that there is such a rational

---

1. AS 08.08.130(a) provides:
   A person who does not qualify under § 140 of this chapter is eligible for admission to the Alaska Bar if he
   (1) is a citizen of the United States.
   [Section 140 of this chapter, mentioned above, deals with the admission of attorneys who are admitted to practice law in other jurisdictions.]

2. Alaska Bar R. II, § 1, provides in part:
   Every person desiring to be admitted to the Alaska Bar shall execute under oath and file with the Secretary of the Association his completed application in duplicate, with two complete sets of fingerprints and two 2″ x 3″ photographs showing a front view of head and shoulders and in such form as may be required by the Board of Governors. No application shall be granted unless the applicant is at the time of filing thereof a citizen of the United States * * *.

3. 378 P.2d 644, 645 (Alaska 1963).

4. *See, e. g.,* In re Day, 181 Ill. 73, 54 N.E. 646, 648 (1899).

5. Comment, Admission to the Bar and the Separation of Powers, 7 Utah L.Rev. 82 (1960):
   [T]he almost universal weight of authority [allows courts] to declare statutes contrary to the rules of the supreme court to be in derogation of a judicial act and therefore violative of the separation of powers ordained by the state constitution.

6. Application of Houston, 378 P.2d 644, 645 (Alaska 1963); Comment, Admission to the Bar and the Separation of Powers, 7 Utah L.Rev. 82 (1960). *See also* Application of Steelman, 448 P.2d 817, 819 (Alaska 1969).

7. 430 P.2d 150, 152 (Alaska 1967).

connection if application of the legislative standards has a *reasonable tendency to determine whether an applicant has a sufficient knowledge of law in Alaska* to hold himself out to the public that he is adequately prepared to assume efficiently the obligations and responsibilities commensurate with representing persons in legal matters. [Emphasis added.]

Against this standard the requirement of citizenship must be measured.

The standard in *Brewer* specifically refers to "a sufficient knowledge of law in Alaska". The first inquiry is whether United States citizenship necessarily has any relationship to one's knowledge of law in Alaska. While it might at first be assumed that in many cases an alien, in this country for only a short time, will be unfamiliar with local law, such an assumption is not appropriate in this case. Petitioner has lived in the United States since 1956, and has not only passed the Alaska bar examination, but has also worked for a number of years as a law clerk for different attorneys in Alaska and has held a position as a law clerk in the Alaska State Housing Authority.

Moreover, it is appropriate to inquire whether the assumption that an alien seeking admission to the Alaska bar is unfamiliar with the law in Alaska is valid in any event. The validity of such an assumption will be provable only by recourse to independent procedures. Thus, where the assumption is valid, it may be expected that the unfamiliarity of the applicant will be reflected in the results of his bar examination, or some other examination into the area of his competence. In those cases where the assumption is repudiated by the facts, it merely adds a burden to the applicant, with no corresponding benefit accruing to the state.

The interests to be protected are the public's interest in having competent practitioners, the bar's interest in insuring that all attorneys in the state are qualified, thereby protecting its good name and reputation, and the courts' interest in having reliable and competent officers of the court to aid the courts in the exercise of the judicial office. Each of these interests will be served by any standard which insures that the professional competence and integrity of the bar is high. None of these interests is directly served by a requirement that attorneys be citizens of the United States.

It has been argued that, although citizenship might not bear directly on fitness to practice, it relates at least indirectly to the question of fitness. It purportedly does so in a number of ways. One writer collected the general reasons given for the exclusion of aliens from legal practice:

(a) the profession requires an appreciation of the spirit of American institutions; (b) the alien cannot take the necessary oath to support the Constitution; (c) war between the United States and the alien's country might necessitate the seizure of the alien with resultant injury to his clients; (d) diversity of citizenship might remove the alien from control of the bar; (e) difficulty of training civil law attorneys in the common law; (f) practice of law is a privilege and not a right which the alien can claim; (g) the attorney is an officer of the court and, as such, should be a citizen.[8]

Some of these reasons may be rejected out of hand. For example, an alien attorney would be under the control of the bar just as much as a citizen attorney so far as his eligibility to practice is concerned. He would be liable to disciplinary proceedings as well as disbarment. The argument that there will be difficulty in training civil law attorneys in the common law is met by the requirement that an applicant be a graduate of a law school approved by the American Bar Association, and by the requirement that the applicant pass a

---

8. Comment, Constitutionality of Restrictions on Aliens' Right to Work, 57 Colum.L.Rev. 1012, 1027 n. 110 (1957).

written bar examination.[9] And as to the "right-privilege" distinction, this has been rejected by the United States Supreme Court in Schware v. Board of Bar Examiners.[10] The remaining arguments made for the citizenship requirement require more detailed analysis.

## (1) Appreciation of American Institutions.

One of the reasons assigned for excluding noncitizens from the practice of law is that the legal profession requires an "appreciation of the spirit of American institutions".[11] We are unable to see any reason why an alien in petitioner's position would be lacking in such an appreciation. He has been in the United States for 14 years where he received his undergraduate and legal education. Certainly in that time and with that background it could be assumed petitioner would appreciate the spirit of American institutions as much as one born or naturalized a citizen of the United States.

Furthermore, the requirement is a vague one at best. To the extent that it relates to the applicant's understanding of what American institutions are all about, it is amenable to testing by examination. In this way the interests of the public, the courts and the bar will be protected. But to the extent such a requirement relates to an applicant's political views, it is likely that it would offend elemental concepts of due process [12] in that it would amount to a general determination that anyone not a citizen must necessarily hold political views which would disqualify him from being a member of the legal profession.[13]

There is no doubt that the automatic determination that every alien must hold unacceptable political views is unwarranted. Thus, the requirement of "appreciation for American institutions", is valid only insofar as it relates to one's understanding of the American system, and more particularly the role of law in that system, and this may be determined much better by tests than by looking at the applicant's nationality.

## (2) Oath to Support Constitution.

Another reason given for exclusion of aliens from legal practice is that the alien cannot take the necessary oath to support the Constitution of the United States.[14] Of course, the alien can, as a matter of fact, take the necessary oath. But it is argued that he cannot do so honestly because of a possible conflict with his own national loyalty.

9. Alaska Bar. R. II, § 1.

10. 353 U.S. 232, 239 n. 5, 77 S.Ct. 752, 1 L.Ed.2d 796, 801 n. 5 (1957).

11. Comment, Constitutionality of Restrictions on Aliens' Right to Work, 57 Colum.L.Rev. 1012, 1027 n. 110 (1957).

12. Cf. Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L. Ed.2d 810 (1957).

13. The United States Supreme Court has recently upheld the right of a bar admission committee to ask an applicant whether he has ever joined or helped organize an organization knowing that it advocated overthrow of the government by unlawful means, and whether he can take an oath that he is loyal to and will support the federal and state constitutions. Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971). The constitutionality of the rule requiring such proof was upheld only because appellee had construed the rule such that it placed no burden of proof on the bar applicant, that "form of government" referred solely to the Constitution, and that "belief" and "loyalty" meant no more than willingness to take the oath to support the Constitution and ability to do so in good faith. Id. at·163, 91 S.Ct. 727. The case, then, can be read as requiring no more than that the applicant may constitutionally be required to take the oath to support the Constitution. And see In re Stolar, 401 U.S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971) and Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971), both prohibiting state bar committees from excluding applicants for refusal to state whether they belonged to any organizations which advocated the violent overthrow of the government.

14. Comment, Constitutionality of Restrictions on Aliens' Right to Work, 57 Colum.L.Rev. 1012, 1027 n. 110 (1957).

694

An alien just visiting or casually in this country for a very temporary period of time may not have the intention to renounce his loyalty to the country of his origin and adopt the solemn obligation of supporting our form of constitutional government. But it is most likely that this is not true of an alien who is lawfully in this country and has the established intent of becoming a citizen of the United States as soon as he is able to qualify under federal law. Such a person is under the same duty to pay taxes,[15] to serve in the Armed Forces,[16] to live within our system of law—including the supreme law of the land—as is a citizen. Indeed, an alien serving in the Armed Forces of the United States must take an oath to "support and defend the Constitution of the United States." [17]

If an alien is lawfully in the United States, and sincerely intends to become a citizen of this country and is doing whatever is necessary under federal law to accomplish that objective, it would seem not unreasonable for the bar association to devise procedures which would permit an applicant to demonstrate the fact of his lawful residence and the requisite intention.[18] Once that has been established, we can see no reason why an applicant for the Alaska bar, who meets all other qualifications as petitioner does, may not honestly and without regard to the laws of his place of origin take an oath to support the Constitution of the United States. If he really is sincere in his intent to become a citizen of the United States, an oath to support the Constitution is meaningful and is not inconsistent in any way with his status, under federal law, as one who has not yet been granted the status of a citizen. From the record, petitioner is in the position of one who can honestly, sincerely and with every good intention subscribe to the necessary oath to support the Constitution of our country.

(3) *Outbreak of War, Seizure of Alien.*

Another general reason given for exclusion of aliens from the legal profession is that the possibility of war between the United States and the alien's country might necessitate the seizure of the alien with resultant injury to his clients.[19]

The possibility of such an occurrence seems remote. But even if it should happen, the internment or seizure of an alien attorney would be no different in practical effect than the death or incapacity of a citizen attorney, so far as clients are concerned.[20] Clients would be inconvenienced to some extent either way in seeking substitute counsel. The possibility of war and resulting disability of an alien attorney is

15. Treas.Reg. § 1.1–1(b) (1971). Nonresident aliens too are required to pay taxes. *See* generally 26 U.S.C.A. § 871 et seq. (1964).

16. [E]very male alien admitted for permanent residence · * * * shall be liable for training and service in the Armed Forces of the United States * *. 50 App.U.S.C.A. § 454 (1967).

17. *See, e. g.*, 10 U.S.C.A. § 502 (1968) [oath for all enlistees]; 5 U.S.C.A. § 3331 (1966) [oath for officers; aliens may serve as Reserve Officers, 10 U.S. C.A. § 591(b) (1) (1964)]. *But see* 50 App.U.S.C.A. § 455 (1967), allowing alien doctors and dentists to become commissioned officers in the Regular Armed Forces, but providing that they may take a different (unspecified) oath prescribed by the Secretary of Defense.

18. We do not mean by this that the alien resident must have filed his official declaration of intent to become a citizen of the United States in accordance with requirements of the Immigration and Naturalization Service. It appears that under federal requirements an alien may not file such a declaration of intent until he has achieved permanent resident status, and in some cases this may take quite a number of years. In this case petitioner had resided in the United States for 14 years before he was qualified to file such a declaration of intent. What we are talking about is ascertainment by the bar association of the applicant's intent to become a citizen, apart from federal requirements of the Immigration and Naturalization Service.

19. Comment, Constitutionality of Restrictions on Aliens' Right to Work, 57 Colum. L.Rev. 1012, 1027 n. 110 (1957).

20. M. Konvitz, The Alien and the Asiatic in American Law 188–89 (1946).

not, we believe, a legitimate factor in denying admission to the bar of a resident alien who intends to be a citizen and meets all other legitimate qualifications of those seeking admission to the legal profession.

### (4) Attorney—Officer of the Court.

The final ground for excluding an alien from the practice of law is that an attorney is an officer of the court and, as such, should be a citizen.[21]

While many of the older state cases which upheld the citizenship requirement used this rationale, none explained it.[22] It seems to be little more than another way of saying that an attorney must take the oath to support the Constitution, and it carries the implication that an alien cannot honestly take the oath. We have already rejected this argument. There seems to us nothing in the phrase "officer of the court" which automatically should exclude aliens who are educated, well-versed in our laws, competent, honest, and ready to serve both client and court.

## CONCLUSION

This review of the reasons given in support of the citizenship requirement of AS 08.08.130 convinces us that the requirement does not, in the words of *Brewer*, have "a rational connection with one's fitness to practice law in Alaska."[23] There are better tests than alienage to determine these matters.[24] Accordingly, we hold that the statutory requirement of citizenship is not one "accepted and established by this court",[25] and that AS 08.08.130(a) (1) is an encroachment upon the prerogatives of this court in establishing regulations for the practice of law in the state of Alaska. This statutory requirement is in violation of the Alaska constitution, article IV, section 1,[26] and is declared to be of no force and effect.

We have reached this conclusion without reference to the constitutional guarantee of equal protection. While an argument may be made that a citizenship requirement for attorneys offends equal protection,[27] we

---

21. Comment, Constitutionality of Restrictions on Aliens' Right to Work, 57 Colum.L.Rev. 1012, 1027 n. 110 (1957).

22. *See* M. Konvitz, The Alien and the Asiatic in American Law 188 (1946).

23. Application of Brewer, 430 P.2d 150, 152 (Alaska 1967).

24. The chief of these is, of course, the bar examination itself. *See, e. g.*, M. Fisher & N. Nathanson, Citizenship Requirements in Professional and Occupational Licensing in Illinois, 45 Chi.Bar Record 391, 397 (1964) :

    It has been suggested in some of the state decisions that there are special reasons for lawyers, as distinguished from members of other professions, to be citizens. These include the suggestions that lawyers are officers of the Court, must take a special oath to support the Constitution, and that they should be particularly familiar with and devoted to the principles of the Constitution. We believe that these considerations may be equally, if not better, satisfied by general requirements with respect to the professional qualifications and character of applicants for admission to the bar.

25. Application of Houston, 378 P.2d 644, 645 (Alaska 1963).

26. Alaska Const. art. IV, § 1 provides in part:

    The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature.

27. An alien is a "person" within the meaning of the fourteenth amendment. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Aliens are therefore entitled to equal protection of the laws. *Id.;* Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915). Equal protection demands that a legislative classification include "all persons who are similarly situated with respect to the purpose of the law." Tussman & tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341, 346 (1949). This standard applies to bar admissions requirements. Schware v. Bd. of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). Thus:

    A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law.

    *Id.* at 239, 77 S.Ct. at 756, 1 L.Ed.2d at 801–802. Since the classification of

deem it unnecessary to decide this question in light of our resolution of the matter on the ground that the statutory requirement of citizenship, as a prerequisite to engaging in the practice of law, will not be accepted by this court.

Our decision as to the ineffectiveness of AS 08.08.130(a) (1) applies as well to that portion of Alaska Bar Rule II, section 1, which requires an applicant for admission to the Alaska bar to be a citizen of the United States. That requirement also is declared to be of no force and effect.

This does not mean, however, that there may not be imposed prerequisites for admission to the bar which bear on the qualifications of an applicant as they relate to citizenship. We pointed out under our discussion of an alien's ability honestly to take an oath to support the Constitution of the United States that if an alien is lawfully in this country, and sincerely intends to become a citizen of the United States and is doing whatever is necessary under federal law to accomplish that objective, it would seem not unreasonable for the bar association to devise procedures which would permit an applicant to demonstrate the fact of his lawful residence and the requisite intention.

When we speak of intention to become a citizen, we are not referring to an alien's "declaration of intention" under the immigration and naturalization laws, which seems to be what has been contemplated by some of the other states which will admit an alien to the practice of law if he has legally declared his intent to become a citizen.[28] What we are talking about is a sincere intent to become a citizen, ascertained by means that may be chosen by the bar association, which do not necessarily have anything to do with the declaration of intent contemplated by the Immigration and Naturalization Service.

Petitioner lawfully resided and was educated in the United States for a period of 14 years before he was qualified, for whatever reason, by the Immigration and Naturalization Service to file his official declaration of intent to become a citizen. We are certain from considering the record that he had the requisite intent to be a citizen long before that, and in a degree and manner that would satisfy requirements for admission to the Alaska bar. We are confident that the Alaska Bar Association can promulgate and present to this court for approval[29] an appropriate rule regarding

citizenship bears no reasonable relationship to the purpose of insuring that lawyers in Alaska are fit to practice law, the requirement arguably offends equal protection.
See also Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1088 (1969) [alienage is a "suspect classification", requiring an even greater showing of "reasonable relation" by the government]; Comment, Constitutionality of Restrictions on Aliens' Right to Work, 57 Colum.L.Rev. 1012 (1957); Comment, Equal Protection and Supremacy Clause Limitations on State Legislation Restricting Aliens, 17 Utah L.Rev. 136 (1970).

28. Washington Court Rule APR 2, subd. B, effective December 29, 1970, provides for admission to the bar of
  (b) an alien permanently residing in the United States in accordance with Federal Immigration and Naturalization Law who has legally declared his intent to become a citizen and is pro-

ceeding with due diligence toward naturalization.
Oregon Revised Statutes § 9.230 provides:
  Any alien who has duly declared his intention of becoming a citizen of the United States, and has become a resident of this state, may be admitted as an attorney with the same powers and privileges as though he were a citizen of the United States. It shall be sufficient if in his application for admission he shows that he has declared his intention of becoming a citizen of the United States; but if within six months after he is entitled to become a citizen of the United States he fails to become a citizen, his admission shall be void.

29. Alaska Bar R. II, § 10 provides:
  Proposals for amendment or abrogation of the Rules of the Alaska Bar respecting admission may be presented to the Supreme Court by petition of the Board of Governors or by a resolu-

residence and intent to become a citizen which will come within the scope of this opinion regarding admission of resident aliens to the Alaska bar.

Petitioner, we believe, has met all of the legally necessary qualifications for admission. His petition for admission to practice law in Alaska is granted.

ERWIN, J., not participating.

tion of the Alaska Bar approved by a vote of a majority of the members

present at a meeting of the Association.