[No. 41627.   En Banc.   August 26, 1971.]

*In the Matter of* CHI-DOOH LI, *Petitioner.*

*Chi-Dooh Li,* pro se.

*Guttormsen, Scholfield, Willits & Ager, Jack P. Schol-field,* and *John A. Hamill,* for Board of Governors.

NEILL, J.—Petitioner seeks admission to the practice of law in this state. He was denied admission to the bar by the Board of Governors of the State Bar Association solely on the basis of a requirement in APR 2B(2) and APR 5G(1) and RCW 2.48.190 and 2.48.210 that applicants be United States citizens.

Petitioner is a citizen of the Republic of China, but has resided continuously in the United States since June, 1962. He is married to an American citizen and is a "resident alien" with permanent residence status, having been granted this status under federal immigration and naturalization statutes in January, 1969, by the United States Department of Justice. He has filed a sworn declaration of intent to become a citizen of the United States in accordance with federal law and will be eligible for citizenship in January, 1972. Pending hearing of this matter, petitioner was permitted to take the July, 1970, bar examination, which he passed. No question as to his qualifications is raised other than that of American citizenship.

Petitioner contends that the citizenship restrictions of the above-cited rules and statutes are invalid on constitutional due process and equal protection grounds, relying on *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886); *Takahashi v. Fish & Game Comm'n,* 334 U.S. 410, 92 L. Ed. 1478, 68 S. Ct. 1138 (1948); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 1 L. Ed. 2d 796, 77 S. Ct. 752, 64 A.L.R.2d 288 (1957). *But cf., In re Admission to the Bar,* 61 Neb. 58, 84 N.W. 611 (1900), and *Large v. State Bar,* 218 Cal. 334, 23 P.2d 288 (1933). He also contends that these rules and statutes conflict with federal immigration statutes (8 U.S.C. § 1101, *et seq.*), citing *Hines v. Davidowitz,* 312 U.S. 52, 85 L. Ed. 581, 61 S. Ct. 399 (1940); *Takahashi v. Fish & Game Comm'n, supra; Purdy & Fitzpatrick v. State,* 71 Cal. 2d 566, 456 P.2d 645 (1969). Finally, he urges that these state requirements conflict with the federal Civil Rights Act of 1870 (42 U.S.C. § 1981), citing *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L. Ed. 23 (1824).

Since the commencement of these proceedings, Admission to Practice Rules have been amended. 78 Wn.2d xxiii, xxiv (1971).[1] These amendments open bar membership to otherwise qualified resident aliens who have declared their

---

[1]Some of the salutary reasons for this rule change are well reflected in the opinion by Justice Dimond in *Application of Park,* 484 P.2d 690 (Alaska, 1971).

intent and are proceeding with due diligence to become citizens. These amendments, if effective, have removed petitioner's ineligibility. The only question is whether the effectiveness of these amendments is precluded by RCW 2.48.190 and 2.48.210, requiring United States citizenship for admission to the practice of law.

■■■ The above statutes pose no bar to the amendment of Admission to Practice Rules, since they have been impliedly repealed by the State Bar Act of 1933 (Laws of 1933, ch. 94) establishing the integrated bar of this state.[2]

RCW 2.48.190 and 2.48.210 are codifications of Laws of 1921, ch. 126. The 1921 act provided:

> No person shall be permitted to practice as an attorney or counselor at law . . . unless he is a citizen of the United States . . .

When the legislature enacted the comprehensive state bar act of 1933, a section was included repealing all acts and parts of acts in conflict. Laws of 1933, ch. 94, § 16. The 1933 act provides (RCW 2.48.060):

> The said board of governors shall likewise have power, in its discretion, from time to time to adopt rules, subject to the approval of the supreme court, fixing the qualifications . . . for admission to the practice of law;
> . . .

In a long line of cases we have held that a statute is impliedly repealed by a later legislative enactment if certain conditions are present in the later enactment. The conditions are (1) the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede prior legislation on the subject; or (2) the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot be reconciled and both given effect by a fair and reasonable construction.

---

[2]In passing it should be noted that our decision here is not to be considered as having any bearing on the issue—not before us—of the inherent power of this court to integrate the bar by rule. Our present examination is limited to considerations pertaining to the statutory requirements for admission to the integrated bar. *See Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P.2d 397 (1936).

*E.g., State v. Becker,* 39 Wn.2d 94, 234 P.2d 897 (1951); *State ex rel. Spokane & Eastern Branch of Seattle First Nat'l Bank v. Justice Court for Spokane Precinct,* 189 Wash. 87, 63 P.2d 937 (1937).

The elements of condition (1) are clearly evident in this case. RCW 2.48.190 and 2.48.210 are a portion of Laws of 1921, ch. 126, which is entitled:

> An Act relating to the practice of law, providing for a State Board of Law Examiners, defining its powers and duties, providing for the licensing of attorneys and counselors at law and for the suspension or revocation of licenses, providing penalties for the violation hereof, . . .

The later enactment, Laws of 1933, ch. 94, is entitled:

> An Act to create an association to be known as the "Washington State Bar Association;" to provide for its organization, government, membership and powers; to regulate the practice of law and to provide penalties for the violation of said act and repealing all acts or parts of acts in conflict therewith.

Each act is complete in itself. The 1933 act covers the entire subject matter of the 1921 act, *i.e.,* the regulation of the practice of law, licensing of attorneys, qualifications to practice, and suspension and revocation of licenses. The 1933 act contains a general repealer section providing: "All acts and parts of acts in conflict with this act, or with any rule adopted hereunder, are . . . hereby repealed." Although we have held that such language will not, of itself, constitute a repeal by implication (*State v. Becker, supra; State Bd. Against Discrimination v. Board of Directors,* 68 Wn.2d 262, 412 P.2d 769 (1966)), the use of this language by the legislature is clear evidence of its intent that prior legislation on the same subject be superseded and is added indicia of such effect. Each element for implied repeal being present, the provisions of the 1921 act are superseded by the 1933 act.[3] Under the latter enactment, the

---

[3] *Accord:* AGO 55-57 No. 1 (January 15, 1955). Although opinions of the Attorney General in construing statutes are not binding on this court, they are entitled to considerable weight. *Davis v. County of King,* 77 Wn.2d 930, 468 P.2d 679 (1970).

power to establish qualifications for admission to practice is specifically entrusted to the Board of Governors of the state bar association, subject to final approval by this court. Pursuant to this authority, the requirement of United States citizenship for admission to the bar has been modified to permit a resident alien to be admitted to the bar, subject to revocation of his license should he fail to seasonably attain citizenship.

An added consideration favoring effectiveness of the amended rules derives from the doctrine of separation of powers. We said in *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 414, 63 P.2d 397 (1937):

> The division of sovereignty into three branches and the investiture of all judicial power in the courts, as prescribed by the constitution, have been recognized and affirmed by this court on repeated occasions.

*Accord, e.g., Plummer v. Gaines,* 70 Wn.2d 53, 422 P.2d 17 (1966); *Territory ex rel. Kelly v. Stewart,* 1 Wash. 98, 23 P. 405, 8 L.R.A. 106 (1890). This basic concept of American constitutional government is discussed in general terms in 16 Am. Jur. 2d *Constitutional Law* § 219 (1964). *See also, Application of Park,* 484 P.2d 690 (Alaska, 1971); 16 Am. Jur. 2d *Constitutional Law* §§ 212-14, 220-22, 234, 239 (1964).

We earlier considered the inherent power of this court to govern admissions to the practice of law in *State ex rel. Laughlin v. Washington State Bar Ass'n,* 26 Wn.2d 914, 916, 176 P.2d 301 (1947), wherein we stated:

> It has been a fixed rule in this state that the paramount power of determining which lawyers may or may not appear in the courts is inherently an attribute of the judicial branch of the state government and, particularly, of the supreme court, which is the highest in order in the judicial hierarchy. . . .
>
>  . . .
>
> Continuously through the years and as late as August, 1945, in *In re Levy,* 23 Wn. (2d) 607, 161 P. (2d) 651, this court has adhered to the rule that the inherent and exclusive power of admission to practice law rests with the court itself and not with the Washington state bar

association or any other agency of the state of Washington. The language used by Judge Robinson, the writer of the opinion in that case, has force in our present discussion:

"We find, upon an examination of the authorities, that they are almost unanimously in accord with the following statement found in *Brydonjack v. State Bar*, 208 Cal. 439, 281 Pac. 1018, 1020, 66 A. L. R. 1507:

" 'Admission to practice is almost without exception conceded everywhere to be the exercise of a judicial function, . . . Admissions to practice have also been held to be the exercise of one of the inherent powers of the court. (*In re Bruen*, 102 Wash. 472 [172 Pac. 1152]; *In re Chapelle*, 71 Cal. App. 129 [234 Pac. 906].)' "

The opinion cites with approval *In re Day*, 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519, regarded in many of the decisions of the country as the leading case. The particular language referred to in the *Day* case is as follows:

" 'The fact that the legislature may prescribe the qualifications of doctors, plumbers, horseshoers and persons following other professions or callings not connected with the judicial system, and may say what shall be evidence of such qualifications, can have no influence on this question. A license to such persons confers no right to put the judicial power in motion or to participate in judicial proceedings. The attorney is a necessary part of the judicial system, and his vocation is not merely to find persons who are willing to have lawsuits. He is the first one to sit in judgment on every case, and whether the court shall be called upon to act depends on his decision. It is our duty to maintain the provision of the constitution that no person or collection of persons, being one of the departments of the government, shall exercise a power properly belonging to another, and if the legislature by inadvertence, as in this case, assumes the exercise of a power belonging to the judicial department, it should only be necessary to call its attention to the restraint imposed by the constitution.' "

In view of our conclusion regarding statutes as to admission to the practice of law, we need not further pursue inherent power considerations. There is no existing contradiction between legislative enactments and the rules of this court regarding admission to the practice of law. The re-

cent amendments to Admission to Practice Rules (2B(2), 3B(1), 5G(1) and 10) are effective and applicable. 78 Wn.2d xxiii, xxiv (1971).

As petitioner now meets all qualifications for admission to practice, he will, upon taking the oath of office and payment of the requisite fees, be admitted to the bar.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, STAFFORD, and SHARP, JJ., concur.

HALE, J. (dissenting)—I think it a mistake in policy and a trespass on the constitutional powers of the legislature for the court to eliminate American citizenship as a requirement for admission to the bar. Events do not warrant such a change in policy; neither does the constitution countenance judicial repeal of a statute.

Petitioner is here as a subject of the Republic of China, undergoing naturalization. No emergency, personal, national or international has been shown to warrant or validate acceleration of his admission. When the minimum residency period expires, he may take the final oath and receive the decree of naturalization and thereafter take the oath of attorney, achieving both citizenship and attorneyship in precisely the way prescribed by law and until now required by rule. The full statutory period of residency in this country required for naturalization should, as the legislature requires, be the minimum for admission to the bar.

It seems a curious anomaly that this court would declare petitioner an attorney at law before any court declares him a citizen. Until he takes the oath of allegiance and renunciation in open court—either in the District Court of the United States or in the Superior Court of the State of Washington (Aliens and Nationality, 8 U.S.C. § 1421 (1970))—both courts are without jurisdiction to admit him to citizenship. The oath of naturalization is a direct and personal commitment. To become a citizen, petitioner must first make a solemn covenant to defend the constitution and laws of the United States; to renounce and abjure absolutely all allegiance and fidelity to the country or sovereign

of which he was subject or citizen; to bear arms in defense of this country or, in case of religious scruples, perform noncombatant service when the country needs his services for the common defense. 8 U.S.C. § 1448 (1970). With all that the practice of law entails in acting as lawyer, confidant, counselor, fiduciary and agent, in courts, private offices and government, this court should require no less a commitment. I think it a serious error in policy to waive those very requirements of attorneys which the Congress has declared to be the bare minimal essential for attaining citizenship.

This country has fought a number of wars since 1941, and now in Viet Nam is engaged in the longest armed conflict in its history. That the Congress has failed to recognize this struggle as a war—with its major military incursion into Laos and Cambodia—in accordance with its exclusive constitutional power to declare war, or in the alternative has purposely surrendered this power to avoid declaring this conflict a nonwar, does not, I think, impair the boon of accelerated citizenship to be conferred upon aliens who have elected to fight in it for the United States.[4]

Although military service is not and ought not be a necessary prerequisite to becoming an attorney, the court, I think, disparages such service by granting to petitioner one of the benefits afforded aliens by law for such military service. A few years' service in the Army, Navy, Marines, Coast Guard or Air Force by the petitioners in this case or in the case of *Hsieh v. Civil Serv. Comm'n*, 79 Wn.2d 529, 488 P.2d 515 (1971), might have rendered both causes moot for all of them may well have become naturalized under accelerated residency. Military service should not be a condition for naturalization or admission to the bar; neither should it be disparaged through extending one of its major earned benefits to everyone.

---

[4]The latest Associated Press figures appearing in a July 8, 1971 Seattle Times article list 45,344 Americans dead and 300,692 Americans wounded in Indochina.

Mr. Chi-Dooh Li does not claim acceleration of his naturalization for military service; his period of residence has, however, been shortened from the normal 5 years to 3 years by virtue of his marriage to an American citizen. All that now stands in the way of his admission to the bar under long-standing legislation is the lapse of a comparatively short time.

What are the reasons for speeding petitioner's admission in this fashion? He entered this country as a citizen and subject of the Republic of China in June, 1962. January 28, 1969, he petitioned and was given the status of an immigrant for permanent residence by the Commissioner of Immigration (8 U.S.C. § 1255 (1970)), an ordinary precondition for ultimate naturalization. His residency requirement will be fulfilled January 28, 1972.

Petitioner's main point, and one alluded to by the court in stating his contentions, was that the statutes and rules of this court requiring that applicants for admission to practice law in this state must be citizens of the United States are unconstitutional and void. Although the court does not appear to have passed directly on this point, it not only changed the rules for admission to practice (APR 2B, 78 Wn.2d xxiii (1971)), to accommodate to this contention, but goes on to hold, too, that the integrated bar act (Laws of 1933, ch. 94, p. 397) by implication authorized the court to abrogate the statutes which require citizenship. The court's decision seemingly rests partly on a change in the court's rules respecting admissions to the bar and partly on what is described as a repeal of a statute by implication. The court says that, in repealing a former statute, the bar association is left with legislatively delegated powers to control admission to the bar and the Supreme Court is released from legislative curbs to exercise what are described as the "inherent powers of the court" to control admission to the bar regardless of statute. Thus, aside from affirmatively changing the court's rules so as to admit aliens to the bar, the majority rediscovers an inherent judicial power to abrogate legislatively-prescribed standards.

As I see it, none of these things happened; there was no repeal by implication; the Supreme Court does not have power to abrogate citizenship as a standard for admission to the bar; and it was a mistake in judicial policy to change the requirement by court rule.

One of the theories upon which the court admits petitioner is that the legislature, in creating the state bar, repealed the statutes prescribing the qualifications and procedures for admission—in effect leaving a power vacuum to be filled by the court's inherent powers. None of these powers, either to repeal or to override a statute by rule, or the exercise of legislative power by the state bar, I think, exists. Neither power nor policy, as I see it, is of controlling effect here. We are directly charged with upholding a provision often reenacted, never repealed—unless by necessary implication—which includes RCW 2.48.190, stating:

> No person shall be permitted to practice as an attorney or counselor at law or to do work of a legal nature for compensation, or to represent himself as an attorney or counselor at law or qualified to do work of a legal nature, unless he is a citizen of the United States and a bona fide resident of this state . . .

Through at least eight distinct enactments and refinements, this statute, or one very much like it, has declared the state's legislative policy from 1863 onward—a policy never until now questioned or sought to be abrogated by this court. Remembering that repeals by implication are disfavored and rarely given effect, I doubt that the legislature intended to confer either upon the bar association administratively or upon this court, the power to work a repealer by court rule.

American citizenship as a prerequisite to the practice of law has been the rule in this jurisdiction since long before statehood. By statute enacted January 24, 1863, the Legislative Assembly of the Territory of Washington provided that "all citizens of the United States" possessing requisite qualifications of learning and ability could be examined and admitted. Laws of 1863 (Tenth Annual Session) p. 403.

In covering the admission of attorneys from other states and territories, the statute specifically required that they be citizens of the United States. Similarly, the Legislative Assembly of the Territory of Washington, by act of November 9, 1877, declared that all applicants seeking admission to the bar must be citizens of the United States. Laws of 1877 (Sixth Biennial Session) p. 321. That statute was codified in Code of 1881, § 3275, p. 570. Laws of 1891, ch. 55, §§ 8, 9, p. 96, prescribed that, before any person be admitted as an attorney or counselor in this state, it must appear to the satisfaction of the court "1. That he is a citizen of the United States, and of the age of twenty-one years." The same criterion appears in the Code of 1896 as § 4023, p. 703 (Laws of 1895, ch. 91, § 4, p. 179), and again in Ballinger's Codes and Statutes of 1897 (vol. 2), as § 4763, p. 1257.

The Code of 1896, § 4021, p. 703 (Laws of 1895, ch. 91, § 2, p. 178), in addition to requiring citizenship, authorized admission by at least two judges of the Supreme Court. The citizenship provision was reenacted without relevant change in Laws of 1897, ch. 13, § 1, p. 12. Remington & Ballinger's Code of 1910 (vol. 1), § 118, p. 191, defining attorney and counselor at law, fixed United States citizenship as one of the conditions of admission (§ 120, p. 191) and declared that admission must be by order of the Supreme Court, thus confirming a legislative policy that, although admission to practice law be finally vested here, the court could not waive the requirement of citizenship. The legislature has consistently prescribed American citizenship as a precondition to admission to the bar and required "that each applicant for admission shall show by his affidavit to the court that he is over twenty-one years of age, [and] a citizen of the United States." Remington & Ballinger's Code of Washington of 1910 (vol. 1), § 120, p. 191. Later, the legislature broadened the definition of an attorney's work:

No person shall be permitted to practice as an attorney or counselor at law or to do work of a legal nature for compensation, or to represent himself as an attorney or counselor at law or qualified to do work of a legal nature,

unless he is a citizen of the United States and a bona fide resident of this state . . .

Laws of 1921, ch. 126, § 4, p. 409. (Then, in section 6, a section which the court now claims power to disregard, the statute spells out how citizenship is to be established:

> Every applicant for admission to the bar shall file his affidavit that he is a citizen of the United States. If a citizen by birth he shall state his birth-place and date of birth; if a citizen by naturalization, the time, place and court in which he or his ancestor made his first and final applications for citizenship and swear that he owes his allegiance to the United States. The applicant shall further state his vocation during the five years immediately preceding his application, and the specific place or places of his residence during that period.

Laws of 1921, ch. 126, § 6, p. 410. Laws of 1921, ch. 126, p. 407, represented the most complete and comprehensive single chapter of statutes governing the qualifications, licensing and the procedures to be undertaken for the study, preparation and admission to the bar and for the regulation, discipline and disbarment of attorneys ever passed in this state. It is this statute, Laws of 1921, ch. 126, p. 407, that the court now says was repealed by implication through the enactment of Laws of 1933, ch. 94, p. 397, creating the Washington State Bar Association.

In one regard, at least, nothing is left to implication in Laws of 1933, ch. 94, § 14, p. 401, for that act expressly makes it a misdemeanor to practice law unless one is an active member of the state bar:

> Any person who, not being an active member of the state bar, or who after he has been disbarred or while suspended from membership in the state bar, as by this act provided, shall practice law, or hold himself out as entitled to practice law, shall be guilty of a misdemeanor: *Provided, however,* Nothing herein contained shall be held to in any way affect the power of the courts to grant injunctive relief or to punish as for contempt.

In holding that the State Bar Act of 1933 worked a repeal by implication of the 1921 act, the court's opinion in effect

says that the bar association and this court are empowered to repeal a criminal statute—a consummation I doubt either intended or countenanced by the legislature when it established the state bar.

As the statutory history shows, the people of this state since territorial days have insisted that members of the bar be citizens of the United States. Each reenactment and extension of the statutes prescribing qualifications for admission specifically declare that the applicant must be a citizen.

The legislature had a right to assume—whether correctly or erroneously—that a connection exists between citizenship and allegiance, between devotion to the ideals of the law and the profession of law, between a binding oath of allegiance and renunciation and an adherence to democratic principles. As between citizens and aliens at the bar, the legislature was within its powers in assuming that citizens will be more likely to advance and improve the system of law and courts in this country than aliens; that citizens will be more deeply devoted to ideals of individual freedom and the Bill of Rights; that American concepts of personal liberty to which this country professes to be devoted, and this nation's proclaimed national purposes to eliminate poverty, encourage world peace, curb crime, control disease and other social evils, will be better advanced if all attorneys are citizens of the United States.

Nor can the requirement of citizenship be fairly pilloried as an ingredient of a latter-day national chauvinism animated by a narrow idea of keeping American courts for Americans. By court rule, citizens of the Republic of China and other aliens, if possessing adequate demonstrated learning in American law, may be allowed to participate specially in particular causes directly affecting their country or citizens of their country under special permission of the court. The line has been and should be drawn at the point where the alien making the profession his life's work seeks a permanent and continuing franchise to *practice* as

attorney here and do work *of a legal nature for compensation* or represent himself as qualified to do so.

Why has the legislature in eight successive enactments, from territorial days until now, retained the citizenship requirement, leaving it neither to the discretion of the courts nor subject to waiver by the organized bar? The answer lies in the nature of an attorney's work, his obligation to his clients and the courts, and his responsibility to the profession in particular and society in general. There is more to the "work of a legal nature" than simply waging law in the courts for another. When this court admits an applicant to the bar, it does more than authorize him to appear on behalf of others in the courts. It empowers him to act for others in innumerable ways, for an attorney's work is nearly unlimited in its scope and variety. He not only acts for others in the courtroom, he counsels them in his office, he lobbies for them in the halls of Congress and in the legislatures and to their subordinate bodies. He may be employed by private citizens, corporations, or foreign governments to influence or effect actions of the executive or legislative branches of government. In the course of his practice, a lawyer will be entrusted with his client's most vital secrets; at other times, representing the United States, he may be given secret information of extreme importance to this country. He cannot ethically divulge the confidences of his client whether it be a private person, a corporation or a government, to anyone except under the most extraordinary circumstances. Once the client has communicated to his counsel the facts upon which the lawyer's counsel is sought, whether the client be a person, a corporation, a state, a foreign government, or the United States, the lawyer's lips as to those particular facts are sealed. Admitted to the bar of one state, a lawyer may be appointed to appear on behalf of the United States in all of the states. Solely because of his professional status as a member of the bar, he may ultimately win a commission or be appointed to offices of the utmost confidentiality and assigned by the government to missions of the gravest urgency and utmost

secrecy. This was so when the territorial court was established in 1854; it is true today. The territorial legislature had the right to assume, as did all succeeding legislatures, that American citizenship be the first requirement, the sine qua non, of admission to practice law. Accordingly, I can find no basis whatever in policy for deleting the citizenship provision and virtually none in law for a repeal by implication. As the statute says (RCW 2.48.190), the practice is "work of a legal nature for compensation;" it invites relationships of the utmost trust, fidelity and confidentiality in court and out.

Among his many obligations, a lawyer, by virtue of his attorney's oath (APR 5), owes to the courts and his country a duty to support and sustain the system established and maintained by the people for the administration of justice and law. The legislature is quite within its discretion in first assuming and then legislating upon the assumption that one cannot serve two masters; that an allegiance and loyalty to one's native land will not be quickly and totally severed before naturalization; and that when an alien attorney's political and sentimental ties to his own country give rise to a conflict with his ties and duties to this country the conflict may substantially impair his fulfillment of the oath of attorney.

An attorney owes to the courts and to the state standards of comportment and integrity in the practice of his profession higher than those expected in other callings. American citizenship may be only one of many factors upon which the public relies in expecting adherence to these obligations, but it is, nevertheless, a significant factor. I think it should be retained.

Nor do I find any basis to read into the State Bar Act of 1933 a repeal by implication of the citizenship provisions of the act of 1921. The two statutes, as related to the citizenship requirement, may exist side by side, free and untrammeled in all their respective glories. They have done so for nearly 40 years. Not until now has there appeared an unreconcilable problem concerning citizenship, nor until now

has any power been discovered in the association's board of governors to repeal the citizenship requirement.

The two statutes which this court now concludes are so totally unreconcilable that the later one works a repeal of the first one are Laws of 1921, ch. 126, p. 407, and Laws of 1933, ch. 94, p. 397, the State Bar Act.

Repeals by implication are disfavored. A later act does not repeal an earlier one unless the two acts are clearly so inconsistent with and repugnant to each other that they cannot by a fair and reasonable construction be reconciled and both given effect. *Abel v. Diking & Drainage Imp. Dist. 4*, 19 Wn.2d 356, 142 P.2d 1017 (1943); *State Bd. Against Discrimination v. Board of Directors, Olympia School Dist. 1*, 68 Wn.2d 262, 412 P.2d 769 (1966); *Copeland Lumber Co. v. Wilkins*, 75 Wn.2d 940, 454 P.2d 821 (1969); *State v. Adams*, 76 Wn.2d 650, 458 P.2d 558 (1969).

The court bases its repealer of the citizenship provision on Laws of 1933, ch. 94, § 16, p. 402, which states that: "All acts and parts of acts in conflict with this act, or with any rule adopted hereunder, are . . . hereby repealed." Since, on its face, citizenship as a condition of admission to the bar in 1921 was not inconsistent with admission in 1933, no repeal can be effected except by direct legislation or by necessary implication. Nowhere in either statute can there be found such irreconcilable conflict or repugnance between them that the citizenship requirement of 1921 did not survive the 1933 integrated bar act.

I would doubt whether the legislature would have enacted the State Bar Act, Laws of 1933, ch. 94, p. 397, and established an integrated bar with mandatory membership as a condition of practice had it been able to anticipate that in 1971 the State Bar Act would be held to abrogate the citizenship requirement and grant to an administrative agency such sweeping legislative powers.

To hold that the State Bar Act worked a repeal by implication of the citizenship requirements enacted in 1921 imports that the legislature by implication intended to accord to the state bar association not only the limited powers of

an administrative agency operating under delegated authority but broad legislative powers as well in apparent conflict with the constitution.

Article 2, section 1, of the Washington State Constitution vests all legislative authority in the legislature and in the people. Except when asserted by initiative or referendum, the legislative power of the state can be exercised only by the legislature and cannot be delegated to or performed by any other agency. *Uhden, Inc. v. Greenough*, 181 Wash. 412, 43 P.2d 983, 98 A.L.R. 1181 (1935). The legislative power can be neither surrendered nor delegated to any other branch of government. *Senior Citizens League, Inc. v. Department of Social Security*, 38 Wn.2d 142, 228 P.2d 478 (1951). Although the legislature may establish administrative agencies and organs of government possessing both executive and quasijudicial power to act within the confines of the statutes creating them and to find facts in the performance of their function upon which they may act (*State ex rel. Namer Inv. Corp. v. Williams*, 73 Wn.2d 1, 435 P.2d 975 (1968); *Miller v. Tacoma*, 61 Wn.2d 374, 378 P.2d 464 (1963)), there has been no authority presented for the proposition that the delegated rule-making authority empowers any administrative agency to repeal a statute. The action of the state bar either in repealing or recommending to this court the repeal of the long-standing statute that applicants for admission to the bar of this state must be citizens of the United States is in excess of the power of either the bar or this court to effectuate such a repeal and is, therefore, invalid and void.

Before petitioner is admitted to the bar, he should be required to take the solemn and binding oath of citizenship, renouncing allegiance and loyalty to the Republic of China and declaring his allegiance and loyalty to this country, its constitution and its laws. I think it a mistake in policy and an error in law to require less of him. The court fails to note any reason for the abrupt change in policy declared in the new rule which eliminates American citizenship as a condition for admission to practice law and the Board of

Governors of the Washington State Bar Association was, I think, mistaken in recommending this change and inviting the court to exceed its constitutional powers in adopting the recommendation.

Had the court the power to make such change—which I think it does not—the former rules on admission requiring American citizenship seemed not only in consonance with what appeared to be an overriding and long-standing legislative policy but declared a sound judicial policy as well which I think should have been left undisturbed. There is little wrong and much good in the proposition that, before one can become a practicing attorney in this state, he first must become a citizen of this country. It seems to me a poor policy to establish lower standards for attorneys than for the naturalization of aliens.

I would affirm.