**STATE of Wyoming, upon the relation of Lorraine J. MANSFIELD, Plaintiff,**

v.

**STATE BOARD OF LAW EXAMINERS, Defendant.**

No. 5158.

Supreme Court of Wyoming.

Oct. 15, 1979.

Lorraine J. Mansfield, pro se.

John D. Troughton, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Berry F. Laws, III, Legal Intern, Cheyenne, for defendant.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROONEY, JJ., and GUTHRIE, J., Retired.*

McCLINTOCK, Justice.

Lorraine J. Mansfield, a resident of Laramie County, Wyoming, but still a Canadian citizen, filed with the State Board of Law Examiners her request to take the examination given by that board pursuant to applicable Wyoming statutes as a prerequisite for admission to practice before this court. Petitioner complied with all requirements imposed by the board and, subject to examination, was eligible to membership in the bar of this state, except that she was not then and is not presently a citizen of the United States. She is a Canadian citizen, living in Laramie County, Wyoming, and in

---

* ROSE, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial

service pursuant to § 5, Art. 5, Wyoming Constitution and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.

January of 1978 became a permanent resident of the United States by authority of the United States Immigration and Naturalization Service. She has signified her intention to become a citizen of the United States as quickly as possible but will in all probability not succeed in that endeavor until the year 1981. She is married and lives in Laramie County, Wyoming, with her husband and one child of the marriage.

The board at first expressed doubt as to the right of petitioner to take the examination because of her noncitizenship. This attitude of the board was dictated by § 33–5–105, W.S.1977, providing that "[n]o one shall be admitted to the bar of this state who shall not be an adult citizen of the United States." Petitioner then filed with this court an original Petition for Writ of Mandamus, alleging the unconstitutionality of the statute, seeking to compel the board to permit her to take the examination, and upon her successful completion thereof to recommend her admittance to the Wyoming bar, notwithstanding her lack of citizenship.

■ In the meantime and prior to any action by this court, the board signified its willingness to permit Ms. Mansfield to take the exam, but said that in the event of her passing it would not recommend her for admission until she had become a citizen of the United States. In view of this, this court on July 20, 1979 entered its order denying issuance of the writ of mandamus but retaining jurisdiction for the purpose of considering petitioner's qualifications in the event the board should certify that she had been successful. She has been so certified, opposing briefs have been filed, and we now hold that § 33–5–105, W.S.1977, insofar as it permits only citizens of the United States to be admitted to the bar of this state is violative of the equal-protection clause of the 14th Amendment to the Constitution of the United States.

We do this on the basis of *In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). In that case the applicant was a citizen of the Netherlands, found in all respects qualified to take the Connecticut bar examination except that she was an alien. The Court held that a state which adopts a suspect classification

"'bears a heavy burden of justification,' *McLaughlin v. Florida,* 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964),'"

which requires that a state

"show that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is 'necessary . . . to the accomplishment' of its purpose or the safeguarding of its interest." 413 U.S. at 721–722, 93 S.Ct. at 2855.

The Court found that this had not been done and held the Connecticut rule requiring citizenship as a condition to admission to the bar to be unconstitutional.

■ There is little to be gained from a long discussion of the reasons for this decision. The Constitution of the United States is the supreme law of the land and binding upon this court, Art. VI, United States Constitution, Art. 1, § 37, Wyoming Constitution, and the Supreme Court of the United States is the final arbiter as to the Federal constitution. *Griffiths* is as close a case to the one at bar as it is possible to have, and a majority of the court see no reason to ignore the ruling.

The Attorney General concedes that on the basis of *Griffiths,* Wyoming's statute is unconstitutional, but seeks to avoid the effect thereof by reference to later cases from the same Court, none of which overrules the previous holding but which are construed by the Attorney General to represent an indication that were the question to come up again the Court would reverse its position. Particularly noted are *Foley v. Connelie,* 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978), and *Ambach v. Norwick,* 441 U.S 68, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979). In the first case the Court sustained a statute of the state of New York which required citizenship as a condition to appointment to the State Highway Patrol. In *Ambach,* the Court similarly sustained a statute disqualifying aliens from holding teaching positions in the public school system. The only mention of *Griffiths* in *Fo-*

*ley* is found in the dissenting opinion of Justice Marshall, 435 U.S. at 303, 98 S.Ct. 1067. The majority in *Ambach* refer to *Griffiths* in a footnote, 441 U.S. at 76, 99 S.Ct. at 1594, 60 L.Ed.2d at 56, n.6, showing no disposition to overrule the same but pointing out this contrast:

" * * * New York's citizenship requirement is limited to a governmental function because it applies only to teachers employed by and acting as agents of the State. The Connecticut statute held unconstitutional in *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973), *by contrast,* applied to all attorneys, most of whom do not work for the government. *The exclusion of aliens from access to the bar implicated the right to pursue a chosen occupation, not access to public employment.*" (Emphasis added.)

Mr. Justice Blackmun, who had specially concurred in *Foley*, dissented in *Ambach*, discussing the applicability of *Griffiths*. The point is that neither opinion shows any disposition to overrule the holding in *Griffiths*. At best we could only speculate that it might at some future date overrule its earlier decision. Under these circumstances a majority of the court are of the opinion that *Griffiths* still represents the "supreme law of the land" which we must follow.

The order of this court will be that Ms. Mansfield be permitted to take the oath as an attorney of the bar of this state..

RAPER, Chief Justice, specially concurring.

I have no disagreement with the majority opinion. This case must be decided upon the authority of *In Re Griffiths*, 1973, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910, whether we personally or individually agree with it or not, for the reasons stated in the majority opinion.

While it represents only my personal view, it is my thought that the legislature should not strike by repeal that first clause of § 33–5–105, W.S.1977, requiring United States citizenship as a prerequisite for admission to the Wyoming State Bar, even though for the moment it is rendered invalid. It has symbolic as well as a real significance as an expression of our loyalty and recognition as a State of the importance of United States citizenship and the ideals of a free people, which attorneys and counselors are especially sworn to uphold. Hopefully, some day its requirement may have its full and intended viability restored. United States citizenship is of greater value than *Griffiths* and our decision here assigns to it. I am torn between my obligation to uphold the law of the land as expressed by the Supreme Court of the United States and my loyalty to the view that United States citizenship should not be eroded in any fashion by even a hint of insignificance. The creeping, insidious deterioration of basic values is foreboding.

ROONEY, Justice, specially concurring.

I concur in the result, but for an entirely different reason than that expressed by the majority of the court. I believe § 33–5–105, W.S.1977, would be constitutional, and I believe it to have been repealed in 1939.

## SECTION 33–5–105, W.S.1977 WOULD BE CONSTITUTIONAL

I do not consider *In Re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973) to be conclusive as to the constitutionality of a statute such as § 33–5–105 for two reasons.

First, *In Re Griffiths* came to the United States Supreme Court on appeal from the Supreme Court of Connecticut. The Supreme Court of Connecticut upheld a denial by the Superior Court of New Haven County of Griffiths' application for admission to the bar of New Haven. Based on a state court rule, the standing committee on recommendations for admission to the bar of New Haven recommended denial of Griffiths' application, and the membership of that bar accepted the recommendation. The original appeal to the Superior Court was from the action of the bar of New Haven County. A Connecticut statute was not involved. In Wyoming, the state bar is an integrated bar, organized and governed by the Supreme Court "as an administrative agency of the supreme court." Section

5–2–118, W.S.1977. Application for admission to the state bar is made to the Supreme Court. The Supreme Court makes the final decision as to admission and does the act of admission. Disciplinary proceedings are those of the Supreme Court. Thus, the Wyoming State Bar has the characteristic "of being organized by or under the direction of the state, and of being under its direct control; and in effect such bars are governmental bodies." 7 Am.Jur.2d, Attorneys at Law § 7. Attorneys at law in Wyoming, therefore, come under the rationale of *Foley v. Connelie*, 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978) and *Ambach v. Norwick*, 441 U.S. 68, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979) rather than that of *In Re Griffiths*, supra.

Second, of the seven supreme court justices on the majority side in the *Griffiths* case, four joined the two dissenting justices in that case to form the majority in the *Foley* case, and three joined the same two dissenting justices to form the majority in the *Ambach* case. As pointed out in the majority opinion in this case, the *Griffiths* case was not *expressly* overruled by the *Foley* and *Ambach* cases, but the latter two cases reflect a new recognition of the status of citizenship and its attribute of allegiance to this country; and it reflects the recognition of the factor of performance of "governmental functions" and of duties with a "rational relationship of state interests" as a basis for upholding the qualification of citizenship for employment. Implicit in this recognition is the potential to hold that failure to permit the qualification of citizenship for the practice of law not only "denigrates" the legal profession but also "denigrates" the status of allegiance to our nation.

### REPEAL OF § 33–5–105, W.S.1977

Section 33–5–105, W.S.1977 provides in part: "No one shall be admitted to the bar of this state who shall not be an adult citizen of the United States * * *." It was enacted with substantially this same language in 1899.

It has been said that:

"The practice of law is so intimately connected with the exercise of judicial power in the administration of justice that the right to define and regulate the practice naturally and logically belongs to the judicial department of the state government. Indeed, it has been said that the courts have an inherent power to regulate the conduct of attorneys as officers of the court and to control and supervise the practice of law generally, whether in or out of court. While it is a prerogative of the judicial department to regulate the practice of law, the legislature, under the police power, may act to protect the public interest, but in so doing, it acts in aid of the judiciary and does not supersede or detract from the power of the courts." 7 Am.Jur.2d, Attorneys at Law § 2, p. 44. The Wyoming legislature has always had the posture of "aid" to the judiciary, and it enacted the law previously referred to authorizing the integrated bar. As part of that enactment, the legislature provided that:

"When and as the rules of Court herein authorized shall be prescribed, adopted, and promulgated, all laws and parts of laws in conflict therewith shall be and become of no further force or effect to the extent of such conflict." S.L. of Wyo.1939, Ch. 97, § 2.

Rule 5, Rules of the Supreme Court, sets forth the provisions relative to admission of attorneys to the Wyoming State Bar.

In the language of *In Re Chi-Dooh Li*, 79 Wash.2d 561, 488 P.2d 259 (1971), at pp. 260–261:

"The above statutes [requiring United States citizenship for admission to the practice of law] pose no bar to the amendment of Admission to Practice Rules, since they have been impliedly repealed by the State Bar Act of 1933 (Laws of 1933, ch. 94) establishing the integrated bar of this state." (Footnote omitted and bracketed material supplied.)

* * * * * *

" * * * The 1933 act contains a general repealer section providing: 'All acts

and parts of acts in conflict with this act, or with any rule adopted hereunder, are * * * hereby repealed.' Although we have held that such language will not, of itself, constitute a repeal by implication [citations omitted], the use of this language by the legislature is clear evidence of its intent that prior legislation on the same subject be superseded and is added indicia of such effect. * * * "

The enactment of Ch. 97, S.L. of Wyo. 1939 (predecessor to § 5–2–118, W.S.1977) authorizing the integrated bar, coupled with the inherent power of the court to control the admissions to practice of law, *Brydonjack v. State Bar of California*, 208 Cal. 439, 281 P. 1018 (1929); *In Re Day*, 181 Ill. 73, 54 N.E. 646 (1899), impliedly repeal that portion of § 33–5–105, W.S.1977 relative to the requirement of citizenship.

Rule 5 of the Rules of the Supreme Court does not contain the requirement of citizenship as a qualification for examination and admission to the bar. It does require a statement in the application for admission of facts "showing that he is a citizen of the United States." Relator was allowed to take the bar examination. She has stated that she was Canadian born; that she married an American citizen in August 1976; that she immediately began procedures to obtain permanent residence status, a prerequisite to obtaining such citizenship; that she intends to become a citizen and will be eligible for such in 1981; and that she has a child who is a citizen. She graduated from the University of Wyoming. She was allowed to take the bar examination and successfully passed.

For the aforesaid reasons she should be permitted to take the oath as an attorney of the bar of this state.