Suphi SURMELI et al., Plaintiffs,

v.

The STATE OF NEW YORK et al., Defendants.

No. 75 Civil 4520.

United States District Court, S. D. New York.

April 7, 1976.

Lans Feinberg & Cohen, New York City, for plaintiffs; Robert Stephan Cohen, Deborah E. Lans, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Robert S. Hammer, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs commenced this action for a judgment declaring unconstitutional the New York State Education Law, section 6524(6), and the rules and regulations promulgated thereunder which (1) require that a physician, to be licensed to practice medicine in the state, must be either a citizen of the United States or file a declaration of intent to become a citizen, and (2) terminate any such license upon the alien physician's failure to become a citizen within ten years of licensure.[1] Since the material facts are not in dispute, the parties agree that the matter is ripe for summary disposition pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiffs, eight physicians, citizens of Turkey, are all resident aliens of the United States and have been licensed to practice medicine by the State of New York under the challenged provision. They were individually licensed on various dates during the period of 1965 to 1971 and are practicing their particular disciplines both privately and at medical institutions. The license of each specifies the date by which citizenship is "required" and each is in imminent danger of revocation of his license under the challenged provision on the sole ground that he has not become a citizen within the proscribed time period.

The complaint charges that the state regulatory scheme which would deprive plaintiffs, who have already been found qualified as physicians and licensed to practice, of their licenses exclusively on the basis of their alienage violates their constitutional rights to equal protection of the laws and due process under the Fourteenth Amendment,[2] and further that this program interferes with the exclusive federal authority to regulate immigration and naturalization under Article VI of the Constitution.

The defendants, at the threshold, contend that plaintiffs, having obtained the benefits of the licensing statute, are estopped from challenging

1. § 6524 provides:
   "To qualify for a license as a physician, an applicant shall fulfill the following requirements: (6) Citizenship: be a United States citizen, or file a declaration of intention to become a citizen unless such requirement is waived, in accordance with the commissioner's regulations; . . . ."
   This section replaced former § 6509, which was repealed in 1971 and which provided:
   "There shall be issued to an applicant who, when admitted to the licensing examination, was a citizen of a foreign country, and who had declared intention of becoming a citizen of the United States, upon passing the examination, a license but upon failure of such licensee within ten years from the date of such declaration of intention to furnish evidence that he has become a citizen his license shall terminate and his registration shall be annulled."
   The requirement of termination at the end of ten years if citizenship is not demonstrated is now embodied in a regulation of the Commissioner of Education, 8 NYCRR § 24.7.

2. Plaintiffs assert this cause of action under the Fourteenth Amendment and under 42 U.S.C. § 1983.

its constitutionality.[3] However, this doctrine of estoppel is a slender reed for defendants to rely on in their attempt to foreclose plaintiffs' constitutional attack. As the Supreme Court observed recently: "[T]his doctrine has unquestionably been applied unevenly in the past, and observed as often as not in the breach."[4] Plaintiffs, once having been found qualified and licensed to practice, acquired a property right which was entitled to constitutional protection.[5] The acceptance of the license did not deprive them of the right to challenge the constitutional validity of the ten-year restriction. As the first Mr. Justice Harlan reasoned in *W. W. Cargill Co. v. Minnesota*: [6]

"[T]he acceptance of a license, in whatever form, will not impose upon the licensee an obligation to respect or to comply with any provision of the statute or with any regulations prescribed by the state . . . that are repugnant to the Constitution of the United States. . . . If the [state] refused to grant a license, *or if it sought to revoke one granted*, because the applicant in the one case, or the licensee in the other, refused to comply with statutory provisions or with rules or regulations inconsistent with the Constitution of the United States, *the rights of the applicant or the licensee could be protected and enforced by appropriate judicial proceedings*." [emphasis added.]

The court holds plaintiffs are not debarred from attacking the provision requiring citizenship within a ten-year period, absent which their licenses are subject to revocation.

We now turn to the merits of plaintiffs' claims. Initially they contend that the defendants' threatened and present enforcement of the statute "arbitrarily and irrationally discriminate against, and separately classify and treat, the plaintiffs solely on the basis of their alienage" in violation of the equal protection clause of the Fourteenth Amendment.

The issue so presented seemingly was put at rest in *In re Griffiths*,[7] where the Supreme Court held unconstitutional Connecticut's exclusion of aliens from admission to practice law. The Court premised its judgment upon basic constitutional concepts: first, that a lawfully admitted resident alien is a "person" within the Fourteenth Amendment's prohibition against denial "to any person within its jurisdiction the equal protection of the laws"; [8] second, that the "right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure"; [9] third, that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny"; [10]

3. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936).

4. *Arnett v. Kennedy*, 416 U.S. 134, 153, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15, 33 (1975).

5. The Supreme Court has consistently held that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 752 (1957). Cf. *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377, 1388 (1959) in which the Court held that "[the] right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liber-

ty' and 'property' concepts of the Fifth Amendment." *United States v. Briggs*, 514 F.2d 794, 798 (5th Cir. 1975).

6. 180 U.S. 452, 468, 21 S.Ct. 423, 429, 45 L.Ed. 619, 626 (1901).

7. 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973).

8. *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220, 226 (1886).

9. *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131, 135 (1915).

10. *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534, 541 (1971).

fourth, that a state which adopts a suspect classification "bears a heavy burden of justification"; [11] and fifth, that "to justify the use of a suspect classification, a State must show that its purpose or interest is both constitutionally permissible and substantial and that its use is 'necessary . . . to the accomplishment' of its purpose or the safeguarding of its interest." [12]

The state, in its effort to overcome the force of *In re Griffiths,* urges that the traditional "rational relationship test" [13] is the standard to be applied in determining constitutionality. Thus, it argues that the state does admit alien physicians to practice and that it is reasonable to require them within ten years, which is asserted as a reasonable period to expect a professional to become established in practice, to demonstrate a political commitment to this country and the community within which they reside and practice their profession. The argument proceeds further—that it is reasonable for the state to encourage physicians, because of their education, talent and the esteem in which they are generally held, to fully participate in public affairs; and finally, the state, in its attempt to sustain its heavy burden of justification, argues that a political commitment to the United States will serve to promote stability in the treatment of patients, since a physician who remains a "sojourner" rather than a citizen is more likely than the latter to remove from the country, leaving his patients to become familiar with another doctor. The short answer to the state's labored argument is that a physician's commitment to the ancient and universal oath of Hippocrates, rather than a political commitment to the United States, is more likely to secure his continued dedication to the interests of his patients and the welfare of the community at large. A physician's participation in political affairs has no bearing on his dedication to his patients' concern. There is not the slightest link between a physician's citizenship and his competency as a physician or surgeon.

The state, of course, has a substantial interest to assure that only those who are professionally and morally qualified minister to the needs of the mentally and physically ill. But whether the rational relationship test, as the state urges, or the compelling or overriding state interest test is the proper standard,[14] the conclusion is compelled that the state's requirement of citizenship as a condition of continued licensure after it has already found an alien physician qualified and licensed him to practice his profession bears no logical relationship to his continued professional competence and thus lacks a rational basis. The requirement of citizenship after ten years of licensure is not to test or determine the physician's professional competence; that was decided when the plaintiffs were previously licensed by the state and permitted to minister to the ill in the community. Their competency during that period in no respect depended upon their citizenship. Each now has the advantage of additional years of experience. If anything, this experience makes them better qualified than when they were first granted their licenses. Thus the instant case is even stronger than *In re Griffiths,* where the state sought to justify *exclusion* of aliens from the practice of law; here the state seeks to justify expulsion from the practice of medicine after having found plaintiffs qualified and permitted them to practice for ten years, during which period they were subject to disciplinary action for any professional misconduct. The state's attempted justification is without substance and accordingly the court decrees section 6524(6) of the State Education Law and the rules and regulations promulgated thereunder unconstitutional as

---

11. *McLaughlin v. Florida,* 379 U.S. 184, 196, 85 S.Ct. 283, 290, 13 L.Ed.2d 222, 231 (1964).

12. *In re Griffiths,* 413 U.S. 717, 721–22, 93 S.Ct. 2851, 2855, 37 L.Ed.2d 910, 915 (1973).

13. *E. g., McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 398 (1961).

14. *See In re Griffiths,* 413 U.S. 717, 722 n. 9, 93 S.Ct. 2851, 2855, 37 L.Ed.2d 910, 915 (1973).

an unlawful discrimination against resident aliens, in violation of the equal protection clause of the Fourteenth Amendment.[15]

This disposition makes it unnecessary to consider plaintiffs' further argument that the act is unconstitutional because it interferes with the exclusive federal power over aliens.

■ Plaintiffs' motion for summary judgment is granted, but only as to the individual defendants, since the defendants State of New York and the New York State Education Department are not amenable to suit.[16]

**15.** See, e. g., Sugarman v. Dougall, 413 U.S. 634, 646, 93 S.Ct. 2842, 2849, 37 L.Ed.2d 853, 862 (1973); C. D. R. Enterprises, Ltd. v. Board of Educ., 412 F.Supp. 1164, 1976 (E.D.N.Y. 3-judge court); Mauclet v. Nyquist, 406 F.Supp. 1233, 1976 (E.D.N.Y. 3-judge court); Ramos v. U. S. Civil Serv. Comm., 376 F.Supp. 361, 367 (D.P.R.1974); Arias v. Exam. Bd., 353 F.Supp. 857, 862 (D.P.R.1972); Mohamed v. Parks, 352 F.Supp. 518, 520-21 (D.Mass.1973); Teitscheid v. Leopold, 342 F.Supp. 299, 302-03 (D.Vt.1971).

**16.** Plaintiffs brought this action under the Fourteenth Amendment and under 42 U.S.C.

§ 1983. However, as plaintiffs now concede, the state and any branch thereof are not "persons" within the meaning of § 1983. See Monroe v. Pape, 365 U.S. 167, 191, 81 S.Ct. 473, 486, 5 L.Ed.2d 492, 507 (1961); Erdmann v. Stevens, 458 F.2d 1205, 1208 (2d Cir. 1972); Meyer v. State of New York, 344 F.Supp. 1377, 1378 (S.D.N.Y.1971). And the state has not consented to suit so that this action is barred as to the defendants State of New York and New York State Education Department. Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662, 672 (1974).