[No. 45314.   En Banc.   November 2, 1978.]

STEEN NIELSEN, *Petitioner,* v. WASHINGTON STATE BAR ASSOCIATION, ET AL, *Respondents.*

*John A. Strait,* for petitioner.

*Kurt M. Bulmer,* for respondents.

HAMILTON, J.—Petitioner Steen Nielsen seeks permission to sit for the Washington State Bar Examination and, upon successful completion thereof, to be admitted to the practice of law.

Petitioner was born in Denmark in 1953. In 1960, he, with his family, immigrated to the United States. Since that time he has been a duly registered permanent resident alien; however, he has not filed a declaration of intent to become a citizen and presently has no plans to do so.

Petitioner received his elementary and secondary education in this country, attended and graduated from Yale University, New Haven, Connecticut, and the University of Puget Sound School of Law. Upon completion of his legal education, he sought permission to take the Washington State Bar Examination.

In accord with Admission to Practice Rules, the respondent Bar Association's representative informed petitioner that because he was a permanent resident alien not in the process of becoming a citizen, he would not be allowed to sit for the examination. He was also informed that, should his citizenship status change in conformity with APR

2(B)(2), he would otherwise be eligible to take the examination.

Petitioner then requested that this court waive the rule which operates to exclude him from participating in the examination. We did so pending resolution of the legal challenge presented by this case.

Petitioner argues APR 2(B)(2) violates the equal protection guaranties of the fourteenth amendment to the United States Constitution and Const. art. 1, § 12. We agree. Our reasons for doing so are set forth below.

■ At the outset of any equal protection analysis, it is necessary to identify the appropriate standard of judicial scrutiny. We note therefore that a statute or rule which does not affect fundamental rights or create a suspect classification is generally subjected to minimal judicial scrutiny and will not be invalidated unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective. *McGowan v. Maryland,* 366 U.S. 420, 425–26, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961). If, however, a statute or rule creates an inherently suspect classification such as one based upon race, nationality, or alienage, when challenged, it will be subjected to strict judicial scrutiny. *Graham v. Richardson,* 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971). The enactment will not be upheld unless the state establishes a compelling interest. And, to do so, the state must show its purpose or interest in the enactment is both constitutionally permissible and substantial, and that use of the classification is necessary to the accomplishment of its interest. *In re Griffiths,* 413 U.S. 717, 721–22, 37 L. Ed. 2d 910, 93 S. Ct. 2851 (1973).

Respondent argues minimal scrutiny should be applied to APR 2(B)(2) because it excludes only those aliens who fail to declare an intent to become citizens. APR 2(B)(2) states:

**B. Qualifications.** A general applicant, in order to be permitted to take the bar examination, must

. . .

(2) Be either:
    (a) a citizen of the United States, or
    (b) an alien permanently residing in the United States in accordance with Federal Immigration and Naturalization Law who has legally declared his intent to become a citizen and is proceeding with due diligence toward naturalization;

In *Nyquist v. Mauclet,* 432 U.S. 1, 53 L. Ed. 2d 63, 97 S. Ct. 2120 (1977), the United States Supreme Court subjected a classification very similar to APR 2(B)(2) to strict scrutiny.[1] In so doing, the court expressly rejected the argument that a statutory classification which affects only those aliens who fail to declare the intent to become citizens was not inherently suspect. The court stated:

> The important points are that § 661(3) is directed at aliens and that only aliens are harmed by it. The fact that the statute is not an *absolute* bar does not mean that it does not discriminate against the class.

(Italics ours. Footnote omitted.) *Nyquist v. Mauclet, supra* at 9. *See Surmeli v. New York,* 412 F. Supp. 394 (S.D.N.Y. 1976), *aff'd sub nom. Nyquist v. Surmeli,* 436 U.S. 903, 56 L. Ed. 2d 400, 98 S. Ct. 2230 (1978).

Similarly, APR 2(B)(2), although not an absolute barrier to membership in the bar, is directed at and harms only aliens. Thus, under *Mauclet,* strict judicial scrutiny is appropriate unless some exception is applicable.

The only recognized exception to the use of strict scrutiny in cases where a classification is based upon alienage is that found in *Foley v. Connelie,* 435 U.S. 291, 55 L. Ed. 2d 287, 98 S. Ct. 1067 (1978) (citizenship requirement approved for police officers). It applies to classifications

---

[1]The statute invalidated in *Nyquist v. Mauclet,* 432 U.S. 1, 3–4, 53 L. Ed. 2d 63, 97 S. Ct. 2120 (1977), reads: "Citizenship. An applicant (a) must be a citizen of the United States, or (b) must have made application to become a citizen, or (c) if not qualified for citizenship, must submit a statement affirming intent to apply for United States citizenship as soon as he has the qualifications, and must apply as soon as eligible for citizenship, or (d) must be an individual of a class of refugees paroled by the attorney general of the United States under his parole authority pertaining to the admission of aliens to the United States." (Footnote omitted.)

respecting the qualifications of jurors, *Perkins v. Smith,* 370 F. Supp. 134 (D. Md. 1974), *aff'd,* 426 U.S. 913 (1976), and elective or important nonelective officials who participate directly in the formulation, execution, or review of broad public policy. *Foley v. Connelie, supra; see Nyquist v. Mauclet, supra* at 11; *Sugarman v. Dougall,* 413 U.S. 634, 647, 37 L. Ed. 2d 853, 93 S. Ct. 2842 (1973).[2]

If *Foley* is read together with *Griffiths,* as it must be read, the narrowness of the above exception becomes clear. In *Griffiths,* despite recognition of the vital role of the attorney, the court used strict scrutiny to invalidate a rule limiting the practice of law to citizens. Then, in *Foley,* the court acknowledged that strict scrutiny was applicable in *Griffiths.* It distinguished *Griffiths* and the right to practice a licensed profession (law) from classifications involving policy responsibilities, the discretionary exercise of which affects the lives of citizens. The *Foley* court stated the exception to the use of strict scrutiny was applicable where a classification reflected the right of citizens to be governed by citizens. But, the court made it clear the exception is *inapplicable* where a challenged rule impacts the right to earn a livelihood, at least where earning that livelihood does not presently involve aspects of the right to govern. *Foley v. Connelie, supra.*

---

[2]In *Sugarman v. Dougall,* 413 U.S. 634, 648–49, 37 L. Ed. 2d 853, 93 S. Ct. 2842 (1973), the court stated in dictum:

This Court has never held that aliens have a constitutional right to vote or to hold high public office under the Equal Protection Clause. Indeed, implicit in many of this Court's voting rights decisions is the notion that citizenship is a permissible criterion for limiting such rights. . . . A restriction on the employment of noncitizens, narrowly confined, could have particular relevance to this important state responsibility, for alienage itself is a factor that reasonably could be employed in defining "political community."

But the court has used strict scrutiny and invalidated citizenship requirements in cases involving the right to practice law, *In re Griffiths,* 413 U.S. 717, 37 L. Ed. 2d 910, 93 S. Ct. 2851 (1973); the right to hold a civil service position, *Sugarman v. Dougall, supra;* the right to financial assistance for higher education, *Nyquist v. Mauclet,* 432 U.S. 1, 53 L. Ed. 2d 63, 97 S. Ct. 2120 (1977); the right to practice medicine, *Surmeli v. New York,* 412 F. Supp. 394 (S.D.N.Y. 1976), *aff'd sub nom. Nyquist v. Surmeli,* 436 U.S. 903, 56 L. Ed. 2d 400, 98 S. Ct. 2230 (1978).

The responsibilities of one who earns a livelihood as a lawyer do not involve unique matters which lie at the heart of our political institutions and justify a citizenship requirement. *In re Griffiths, supra; Foley v. Connelie, supra.* And the remote possibility of election to the bench does not warrant describing *every* attorney as one whose responsibilities involve the right to govern.

In light of *Mauclet, Foley,* and *Griffiths,* it appears beyond question that APR 2(B)(2) must be subjected to strict judicial scrutiny. Strict scrutiny is in full accord with our long–standing recognition that constitutional guaranties do not acknowledge distinctions between citizens and resident aliens. *Herriott v. Seattle,* 81 Wn.2d 48, 500 P.2d 101 (1972). In *Herriott,* we adopted the view that any classification which treats all aliens as undeserving and all United States citizens as deserving rests upon a very questionable basis.[3] We recognized that we have long since passed the time in history when resident aliens were to be subjected to unnecessary discrimination.

The court is not alone in this recognition. We observe that Washington's voters in 1966 chose to repeal Const. art. 2, § 33, a prohibition against the ownership of land by aliens who did not intend to become citizens. Const. amend. 42, repealing Const. art. 2, § 33 (amendments 24 and 29). By doing so, they, like the courts, impliedly took cognizance of the fact that citizenship is not closely related to many of life's pursuits. Thus, they recognized that a prohibition against the ownership of land which affected the concurrent right to earn a livelihood from the land was unnecessary discrimination. Clearly, the right to be free of discrimination—at least in the absence of a compelling state interest—is basic in our society.

▮ Therefore, we must now examine the substantiality of the state's interest in APR 2(B)(2) and the limits within

---

[3]In *Herriott v. Seattle,* 81 Wn.2d 48, 500 P.2d 101 (1972), we expressed no opinion, however, as to the right to employment of resident aliens who did not elect to apply for citizenship.

which its discrimination against aliens in confined. *Sugarman v. Dougall, supra* at 642. APR 2(B)(2) is valid only if its discrimination is a *necessary* implement of *compelling* state interest. *In re Griffiths, supra* at 723.

It is beyond argument that the state has an obvious, constitutionally permissible, and substantial interest in the character and general fitness requisite for an attorney. *In re Griffiths, supra; see Law Students Civil Rights Research Council, Inc. v. Wadmond,* 401 U.S. 154, 27 L. Ed. 2d 749, 91 S. Ct. 720 (1971). To insure its interest, the state may exclude from the practice of law persons unfit by reason of insufficient learning or poor character. *In re Schatz,* 80 Wn.2d 604, 497 P.2d 153 (1972); *In re Krogh,* 85 Wn.2d 462, 536 P.2d 578 (1975). But in this case no question is raised as to petitioner's good character or general fitness. Rather, the sole basis for respondent's refusal of petitioner's request to sit for the bar examination was that he was not in the process of becoming a citizen.

Respondent asserts that this refusal pursuant to APR 2(B)(2) is necessary. Its argument regarding the necessity of excluding aliens mirrors its argument dealing with the appropriate level of scrutiny. Respondent contends that the unique position of an attorney in society justifies a classification which excludes from the practice of law those persons who do not intend to become citizens. As it did in support of its first argument, respondent relies on the *Foley* case which sanctions classifications based on citizenship status for jurors, voters, and law enforcement officers.

As we have pointed out, the basis for sanctioning classifications with respect to the above pursuits rests on the state's historical power to exclude aliens from participation in its democratic political institutions. Participation in the private practice of law simply cannot be equated with participation in activities at the heart of our political institutions. For example, an attorney does not, by virtue of his oath, have the right to exercise the broad power over people

generally which the court in *Foley* found significant. He has no power to arrest citizens as does a police officer. He has no power to judge citizens as do judicial officers or jurors. Rather, he "is engaged in a private profession, important though it be to our system of justice. In general he makes his own decisions, follows his own best judgment, collects his own fees and runs his own business." *Cammer v. United States,* 350 U.S. 399, 405, 100 L. Ed. 474, 76 S. Ct. 456 (1956); *In re Griffiths,* 413 U.S. 717, 728–29, 37 L. Ed. 2d 910, 93 S. Ct. 2851 (1973).

Respondent cannot demonstrate the necessity of APR 2(B)(2) by arguing that admission to the bar generates a status where membership in the judiciary *could* result.[4] In analyzing an occupation from which aliens are excluded, the constitutionally relevant focus is on the *present* status and responsibilities of that occupation, not on some speculative future status or responsibilities. The occupation of attorney is not somehow transformed into an occupation at the heart of the political process merely because at some point in time an attorney might become a judge.

Further, as we have stated, the rule which permits classifications based on alienage where the political process is involved is to be construed *narrowly. See Foley v. Connelie,* 435 U.S. 291, 55 L. Ed. 2d 287, 98 S. Ct. 1067 (1978), and *In re Griffiths, supra.* The comprehensive exclusion of aliens who do not intend to become citizens from the practice of law, merely to insure such persons are not elected to the judiciary or other political office, sweeps broadly. Alternative means, such as constitutional and legislative prohibitions against noncitizen judges or political officials are

---

[4]Under Washington's scheme the status of attorney is the only present criteria for membership in the judiciary of the superior court or supreme court. Const. art. 4, § 17 states:

> No person shall be eligible to the office of judge of the supreme court, or judge of a superior court, unless he shall have been admitted to practice in the courts of record of this state, or of the Territory of Washington.

*But see* RCW 3.04.040, requiring citizenship for justices of the peace. We note, however, that by virtue of Const. art. 3, § 25 (amendment 31) the noncitizen attorney is precluded from holding certain other state offices.

available.[5] Therefore, it is unreasonable to assume the United States Supreme Court would find that this classification comports with the narrow rule permitting the exclusion of aliens.

Apart from the suggestion that it is necessary to exclude aliens from the practice of law in order to exclude them from the judiciary, it has been argued that citizenship relates to fitness to practice law in a number of ways. One writer has collected the general reasons given for exclusion of aliens from legal practice. He states:

> (a) the profession requires an appreciation of the spirit of American institutions; (b) the alien cannot take the necessary oath to support the Constitution; (c) war between the United States and the alien's country might necessitate the seizure of the alien with resultant injury to his clients; (d) diversity of citizenship might remove the alien from control of the bar; (e) difficulty of training civil law attorneys in the common law; (f) practice of law is a privilege and not a right which the alien can claim; (g) the attorney is an officer of the court and, as such, should be a citizen.

Comment, *Constitutionality of Restrictions on Aliens' Right to Work,* 57 Colum. L. Rev. 1012, 1027 n.110 (1957).[6]

Each of these justifications has been cogently refuted by writers, state courts, and finally, by the Supreme Court. *See* M. Konvitz, *The Alien and the Asiatics in American Law* 188 (1946); *Application of Park,* 484 P.2d 690 (Alas. 1971);

---

[5]For example, Const. art. 3, § 25 (amendment 31) restricts certain nonjudicial state offices to citizens. *In re Bartz,* 47 Wn.2d 161, 287 P.2d 119 (1955). RCW 3.04.040 restricts the position of justice of the peace to citizens. Other constitutionally permissible statutes could be enacted which could restrict noncitizen lawyers insofar as local political offices be concerned if such became the will of the legislature. And if legislation is not forthcoming the electorate can, by refusing to vote for noncitizens, effectively exclude such persons from public office.

[6]It should be observed, with respect to these contentions, that, as noted in *In re Griffiths,* 413 U.S. 717, 722, 37 L. Ed. 2d 910, 93 S. Ct. 2851 (1973): "Resident aliens, like citizens, pay taxes, support the economy, serve in the Armed Forces, and contribute in myriad other ways to our society."

*In re Griffiths, supra.* It would add little to this opinion to restate the refutations set forth in those sources. It suffices to say that the Washington State Bar has adequate freedom to gauge on a case–by–case basis the fitness of a permanent resident alien to practice law. Moreover, if admitted to the bar, the noncitizen lawyer like the citizen lawyer is subject to continuing scrutiny by the bar and the courts. The exclusion of aliens who do not intend to become citizens simply cannot be said to be a *necessary* implement of a compelling state interest.[7]

The result we reach in this case is dictated by cases interpreting the Fourteenth Amendment guaranty of equal protection. *Foley v. Connelie, supra; In re Griffiths, supra; Nyquist v. Mauclet,* 432 U.S. 1, 53 L. Ed. 2d 63, 97 S. Ct. 2120 (1977); *Sugarman v. Dougall,* 413 U.S. 634, 37 L. Ed. 2d 853, 93 S. Ct. 2842 (1973); *Surmeli v. New York,* 412 F. Supp. 394 (S.D.N.Y. 1976), *aff'd sub nom. Nyquist v. Surmeli,* 436 U.S. 903, 56 L. Ed. 2d 400, 98 S. Ct. 2230 (1978). Even if we were not convinced these cases necessitated the outcome in this case, Washington's recognition of the questionable basis on which alienage classifications rest would support strict scrutiny in this case. *See Herriott v. Seattle,* 81 Wn.2d 48, 500 P.2d 101 (1972), and Const. art. 2, § 33 (amendment 42).

Accordingly, under current standards, we hold void that portion of APR 2(B)(2)(b) which predicates permission to take the bar examination upon a declaration of intent to become a citizen.

APR 2(B)(2)(b) is therefore amended to read:

(b) an alien lawfully admitted for permanent residence in accordance with Federal Immigration and Naturalization Law.

---

[7]U.S. Const. art. 1, § 8 provides Congress exclusive power over naturalization. Were we to find that the exclusion of certain aliens was a necessary implement of a compelling interest, it would appear enforcement of an incentive to citizenship could conflict with federal authority to control naturalization. *See Graham v. Richardson,* 403 U.S. 365, 376–80, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971).

Respondent is directed to process petitioner's application in a manner consistent with this opinion.

STAFFORD, UTTER, HOROWITZ, and DOLLIVER, JJ., concur.

HICKS, J. (concurring)—APR 2(B)(2)(b), as it existed prior to this case, required an alien general applicant to declare his intention to become a citizen of the United States before he would be permitted to take the bar examination, the prerequisite to admission to the bar of the State of Washington. That rule seems eminently reasonable to me, and I find that I agree with much of what Hale, J. (dissenting) said in *In re Chi–Dooh Li,* 79 Wn.2d 561, 567, 488 P.2d 259 (1971), when the requirement was modified that one must become a citizen before he could become a practicing attorney in this state. Nonetheless, I concur in the result in this case solely because the decisions of the United States Supreme Court seem to permit no other.

WRIGHT, C.J., and ROSELLINI and BRACHTENBACH, JJ., concur with HICKS, J.