IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32834-1-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 32846-5-III) |
| v. | ) | |
| | ) | |
| JAMES CORTEZ JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | |
| ——————————————— | ) | |
| | ) | OPINION PUBLISHED IN PART |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| JAMES CORTEZ JOHNSON, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |

SIDDOWAY, J. — In a late-filed appeal,[1] a pro se statement of additional grounds, and a timely personal restraint petition, James Johnson challenges the sufficiency of evidence to support his conviction of second degree assault, the sentencing court's imposition of legal financial obligations, its directive that he provide a DNA[2] sample, and

_____

[1] Finding extraordinary circumstances, a commissioner of our court extended the time within which Mr. Johnson could file his notice of appeal. *See* Comm'r's Ruling No. 32834-1-III (Jan. 13, 2015).

[2] Deoxyribonucleic acid.

the effectiveness of his counsel's assistance at trial and on appeal.

In the published portion of this opinion, we address Mr. Johnson's claim that imposing the mandatory DNA fee provided by RCW 43.43.7541 violates equal protection when applied to a repeat offender. We hold that Mr. Johnson fails to demonstrate the discriminatory intent that must be shown when a neutral statute is challenged based on disparate impact.

In the unpublished portion of this opinion, we address his remaining contentions. Finding no error, abuse of discretion, or ineffective assistance of counsel, we affirm the judgment and sentence and dismiss the personal restraint petition.

## FACTS AND PROCEDURAL BACKGROUND

In November 2013, a jury found James Johnson guilty of the second degree assault of his girlfriend, for strangling or threatening to hit her in the face with a brick (assertedly a deadly weapon). The sentencing court imposed $5,140.88 in legal financial obligations (LFOs). The court also ordered Mr. Johnson to cooperate in collection of a DNA sample.

Mr. Johnson appeals, arguing that it violates substantive due process and equal protection to impose a DNA collection fee on an offender who has previously paid a DNA collection fee in connection with a prior felony conviction, that the trial court improperly imposed LFOs without making an individualized inquiry into his financial ability to pay, and that it is a manifest abuse of discretion to require him to submit another DNA sample when he has previously submitted one. In a timely personal restraint petition (PRP), he

2

argues that insufficient evidence supports his conviction and that he received ineffective assistance of both trial and appellate counsel.

We first address his equal protection challenge to the imposition of the DNA collection fee and then turn to his remaining arguments.

Equal Protection

RCW 43.43.7541 requires every felony sentence imposed on an adult (as well as certain other sentences) to include a $100 DNA fee. The funds are applied toward state and local costs of maintaining a DNA database that facilitates future criminal identification, which Mr. Johnson admits is a legitimate state interest. Br. of Appellant at 17. But he argues that RCW 43.43.7541 violates equal protection by irrationally requiring some defendants (first-time felony offenders) to pay the fee once, while other defendants (repeat felony offenders) must pay the fee multiple times. Br. of Appellant at 19. Where an offender has already paid a DNA collection fee and submitted his DNA, he contends that imposing a second fee is not rationally related to the statute's purpose of collecting, analyzing, and retaining felony offenders' DNA. *Id.* at 21.

"Under the equal protection clause of the Washington State Constitution, article [I], section 12, and the fourteenth amendment to the United States Constitution, persons similarly situated with respect to the legitimate purpose of the law must receive like treatment." *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992). "The appropriate level of scrutiny in equal protection claims depends upon the nature of the classification

or rights involved." *State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010). Strict scrutiny applies if the classification is based on a suspect class, such as race, nationality, or alienage, or if it affects a fundamental right. *Nielsen v. Wash. State Bar Ass'n*, 90 Wn.2d 818, 820, 585 P.2d 1191 (1978). Intermediate scrutiny applies "when important rights or semisuspect classifications are affected." *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996). "Absent a fundamental right or suspect class, or an important right or semisuspect class, a law will receive rational basis review." *Hirschfelder*, 170 Wn.2d at 550. Mr. Johnson concedes that because multiple felony offenders are not a suspect or semisuspect class and no fundamental right is at issue, rational basis review applies. Br. of Appellant at 19-20.

RCW 43.43.7541 does not distinguish between single and multiple felony offenders. It requires the sentencing court to impose a DNA fee in "[e]very sentence imposed for a crime specified in RCW 43.43.754." Mr. Johnson is essentially arguing that the statute, which is neutral on the matter of how many times an offender has been convicted, has a disparate impact on repeat offenders. Without proof of discriminatory intent, a generally applicable law with disparate impact is not unconstitutional. *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 207, 128 S. Ct. 1610, 170 L. Ed. 2d 574 (2008). "The Fourteenth Amendment does not regard neutral laws as invidious ones, *even when their burdens purportedly fall disproportionately on a protected class. A fortiori* it does not do so when . . . the classes complaining of disparate impact are not

4

even protected." *Id.* (some emphasis added), *accord State v. Saintcalle*, 178 Wn.2d 34, 53-54 n.8, 309 P.3d 326 (2013) (observing that before the decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)), "it was well established that disproportionate impact alone does not violate the equal protection clause.").

Mr. Johnson does not assert, let alone demonstrate, that the legislature had a discriminatory intent in enacting RCW 43.43.7541.[3] This court has previously recognized that the legislature's purpose in adopting the law was to fund the operation of databases that it has found to be "important tools in criminal investigations, in the exclusion of individuals who are the subject of investigation or prosecution, and in detecting recidivist acts." *State v. Brewster*, 152 Wn. App. 856, 860, 218 P.3d 249 (2009). It has held that the DNA fee's "purpose is monetary, rather than retributive or deterrent," and that it "is not excessive in relation to its purpose." *Id.* at 861.

Because Mr. Johnson does not demonstrate discriminatory intent, we need not

---

[3] He also does not contend that the equal protection analysis under the Washington Constitution differs from that under the federal constitution. The equal protection clauses of the United States Constitution, amendment XIV, section 1, and the Washington Constitution, article I, section 12 are substantially identical. *State v. Shawn P.*, 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993).

engage in rational basis review of this neutral statute.[4] It does not violate constitutional guarantees of equal protection.

For reasons discussed hereafter, we affirm Mr. Johnson's conviction, dismiss his personal restraint petition, and remand for resentencing with proper consideration of his ability to pay any discretionary LFOs imposed.

A majority of the panel having determined that only the forgoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

## *I. Violation of RCW 10.01.160(3)*

For the first time on appeal, Mr. Johnson argues the sentencing court did not conduct a required individualized inquiry into his ability to pay LFOs and, for that reason, we should remand for resentencing. The court imposed a total of $5,140.88 in LFOs, consisting of a $500 victim assessment, $100 domestic violence assessment, $2,297.88 in witness costs, $193 in sheriff service fees, a $200 criminal filing fee, $750

---

[4] Under the rational basis test, we would determine if there is a rational relationship between the classification and a legitimate state interest. *State v. Osman*, 157 Wn.2d 474, 486, 139 P.3d 334 (2006). "Underlying this scrutiny is the notion that the party challenging the classification has the heavy burden of overcoming the presumption of a statute's constitutionality." *Yakima County Deputy Sheriff's Ass'n v. Bd. of Comm'rs*, 92 Wn.2d 831, 835, 601 P.2d 936 (1979).

in fees for a court-appointed attorney, a $1,000 fine provided by RCW 9A.20.021 (authorizing maximum fines for each class of crimes), and a $100 DNA collection fee.

As a preliminary matter, we consider whether to accept review of Mr. Johnson's contention that the trial court failed to comply with RCW 10.01.160(3), since Mr. Johnson made no objection to the finding that he was able to pay the costs imposed at the time of sentencing and thereby failed to preserve a claim of error. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015) ("[u]npreserved LFO errors do not command review as a matter of right."). "[A] defendant has the obligation to properly preserve a claim of error" and "appellate courts normally decline to review issues raised for the first time on appeal." *Id.* at 830, 834. The rationale for refusing to review an issue raised for the first time on appeal is well settled: issue preservation helps promote judicial economy by ensuring "that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011).

Mr. Johnson unquestionably waived his right to appeal the trial court's finding and imposition of discretionary LFOs, but we enjoy discretion to make an exception to the general requirement of issue preservation. In this case, since a majority of this panel favors exercising discretion to review the issue where discretionary LFOs of this magnitude have been imposed, we exercise our discretion to review the issue.

RCW 10.01.160(3) provides that "[t]he court shall not order a defendant to pay

7

costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant." The legislature "intended each judge to conduct a case-by-case analysis and arrive at an LFO order appropriate to the individual defendant's circumstances." *Blazina*, 182 Wn.2d at 834. In order to comply with the statute, an individualized inquiry must be made on the record. *Blazina*, 182 Wn.2d at 838. The inquiry must include the court's consideration of "important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay." *Id.*

The statutory inquiry is required only for *discretionary* LFOs. *State v. Clark*, 191 Wn. App. 369, 373, 362 P.3d 309 (2015). The $800 ordered for the victim assessment, filing fee, and DNA collection fee are mandatory obligations not subject to RCW 10.01.160(3). *Id.* at 374; RCW 7.68.035; RCW 36.18.020(2)(h); RCW 43.43.7541.[5] Since the statutory inquiry is also limited to "costs," a fine, which is not a cost within the meaning of RCW 10.01.160(2), is not subject to the statute's requirement of inquiry into ability to pay. *Clark*, 191 Wn. App. at 376.

---

[5] In *State v. Duncan*, No. 90188-1, 2016 WL 1696698, at *2 n.3 (Wash. Apr. 28, 2016), the Washington Supreme Court recently noted that it had not had occasion to consider the constitutionality of legislation designating costs as mandatory, at the same time observing that in *State v. Curry*, 118 Wn.2d 911, 915-16, 829 P.2d 166 (1992) it held that constitutional infirmity was avoided by safeguards sufficient to prevent the defendants from being sanctioned for nonwillful failure to pay. Mr. Johnson has raised no constitutional challenge to the mandatory character of some of the LFOs imposed.

In sentencing Mr. Johnson, the court did not conduct an individualized inquiry into his ability to pay the discretionary LFOs. The only reference to Mr. Johnson's financial situation was the following boilerplate language contained in the judgment and sentence: "The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change." Clerk's Papers (CP) at 38. We therefore remand to the trial court for resentencing with proper consideration of Mr. Johnson's ability to pay the discretionary LFOs.

### II. DNA fee as violating substantive due process

Mr. Johnson next argues that the mandatory imposition of the DNA collection fee provided by RCW 43.43.7541 violates substantive due process as applied to him. This argument is also raised for the first time on appeal, but unlike Mr. Johnson's LFO challenge, he does not ask us to exercise discretion to consider it. Presumably he contends, as have other defendants raising this issue on appeal, that the error is "manifest error affecting a constitutional right," which is an exception from RAP 2.5(a)'s requirement of issue preservation. RAP 2.5(a)(3).

To qualify for the exception provided by RAP 2.5(a)(3), an appellant must "demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). An error will be considered manifest when there is actual prejudice, meaning a plausible showing by the

9

appellant that the asserted error had practical and identifiable consequences in the trial. *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015). "[T]he focus of the actual prejudice [inquiry] must be on whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100.

As previously discussed, RCW 43.43.7541 requires every felony sentence imposed on an adult to include a $100 DNA fee for a purpose that Mr. Johnson admits is a legitimate state interest. He contends, however, that the legislation cannot survive even the most deferential "rational basis" review if it is applied to individuals who cannot afford to pay the fee. He contends that he is such an individual.

It is well settled that a state may not invidiously discriminate against, or arbitrarily punish, indigent defendants for their failure to pay fines they cannot pay. *State v. Johnson*, 179 Wn.2d 534, 552, 315 P.3d 1090, *cert. denied*, ___ U.S. ___, 135 S. Ct. 139, 190 L. Ed. 2d 105 (2014) (citing *Bearden v. Georgia*, 461 U.S. 660, 665, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983). The implications of Mr. Johnson's argument—that we find a substantive due process violation whenever an otherwise rational law is applied to someone who cannot afford to comply with it—are, frankly, staggering. So far, however, we have refused to entertain a substantive due process challenge to the DNA fine on a threshold basis: no challenger to date has presented a record on appeal that is sufficient to review the argument. *E.g., State v. Stoddard*, 192 Wn. App. 222, 228-29, 366 P.3d 474 (2016); and *cf. Johnson*, 179 Wn.2d at 551-52 (limiting standing to challenge license

10

suspension for nonpayment of child support to the constitutionally indigent).

The record contains no information that Mr. Johnson lacks funds to pay a $100 fee; he directs us only to his statutory indigence for purposes of court appointment of appellate counsel. Evidence of his statutory indigence is unhelpful because the cost of appellate representation in a criminal matter "exponentially exceeds $100." *Id.* at 228. Mr. Johnson has failed to show manifest error and we decline to exercise discretion to review his substantive due process challenge.

### *III. Repeat collection of DNA sample*

Mr. Johnson next argues the trial court abused its discretion when it ordered him to submit a DNA sample, since he had already provided one in connection with prior felony convictions. He mischaracterizes the court's order.

Section 4.4 of his judgment and sentence provides:

> **DNA Testing.** The defendant shall have a biological sample collected for purposes of DNA identification analysis and the defendant shall fully cooperate in the testing. The appropriate agency shall be responsible for obtaining the sample prior to the defendant's release from confinement. *This paragraph does not apply if it is established that the Washington State Patrol crime laboratory already has a sample from the defendant for a qualifying offense.* RCW 43.43.754.

CP at 41 (emphasis added).

Mr. Johnson's abuse of discretion argument proceeds from the premise that it can and will be established that the Washington State Patrol Crime Laboratory already has a DNA sample from him. If the premise is correct, the judgment and sentence relieves him

11

from the collection requirement. No abuse of discretion is shown.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds for review (SAG), Mr. Johnson raises three.

*Ineffective assistance: failure to offer evidence.* Mr. Johnson argues that his lawyer failed to offer evidence that the witness who called the police to report his alleged assault of his girlfriend (the witness was a friend of his girlfriend) was upset with Mr. Johnson for telling her to leave his home and not return, and the false report was her revenge. He states the witness placed several calls to the police, and each time the police found no strangulation marks and told Mr. Johnson they knew the witness was lying. According to Mr. Johnson, even on the date of the alleged assault, the police found no marks on the victim's neck, no brick, and did not find that she was held against her will. Mr. Johnson's lawyer did not offer any of this evidence, which he argues would have created reasonable doubt.

To demonstrate ineffective assistance of counsel (which is the nature of this first additional ground for review), a defendant must prove that

> (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

12

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The claim fails if the defendant fails to satisfy either prong. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). There is a strong presumption that counsel performed effectively. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A claim of ineffective assistance of counsel is a mixed question of law and fact and is reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Mr. Johnson's contention that his trial lawyer failed to present available exculpatory evidence or properly impeach the State's evidence involves factual allegations outside the record of this appeal. Because we have no ability to assess his arguments without a record, his remedy is to seek relief by personal restraint petition. *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

*Insufficient evidence.* Mr. Johnson argues there was insufficient evidence to support the jury's verdict that he was guilty of second degree assault because the victim never called the police or made any reports of violence, there were no hospital visits, no injuries, and no signs of abuse. He contends that while he admitted to the offense of simple assault of the victim, he never admitted to second degree assault, and the jury was misled to believe he had. Mr. Johnson also argues the victim's testimony at trial was clearly false. He argues the State's entire case was based on "he said/she said" testimony, which he contends is insufficient to support his conviction.

"He said/she said" evidence *is* sufficient to support a jury verdict if, as evidently

13

happened here, "she," rather than "he," is believed by the jury. Appellate courts do "not second-guess the credibility determinations of the jury" without clear cause. *In re Det. of Halgren*, 156 Wn.2d 795, 811, 132 P.3d 714 (2006); *State v. Kirkman*, 159 Wn.2d 918, 938, 155 P.3d 125 (2007). The only evidence in the record that contradicts the victim's testimony and the supportive testimony of her daughter was Mr. Johnson's testimony. Viewed in the light most favorable to the State, the evidence was sufficient to prove second degree assault beyond a reasonable doubt.

*Ineffective assistance: additional failures to present evidence.* Mr. Johnson argues that his trial attorney provided ineffective assistance of counsel when he failed to introduce evidence of prior police reports and statements showing that the victim's story changed. He requests a new trial in which the victim can be cross-examined as to these inconsistencies.

Here again, nothing in the record supports his allegations that impeaching evidence exists but was not offered by his lawyer. His remedy is to seek relief by personal restraint petition. *Norman*, 61 Wn. App. at 27-28.

PERSONAL RESTRAINT PETITION

*Ineffective assistance of appellate counsel.* In a timely PRP, Mr. Johnson first argues that his appellate lawyer provided him with ineffective assistance because he told Mr. Johnson he would not have a strong appeal and refused to file one. Based on this contention, a commissioner of our court enlarged Mr. Johnson's time to file his appeal,

14

*see* Comm'r's Ruling No. 32834-1-III (Jan. 13, 2015) at 2, and Mr. Johnson did, in fact, file an appeal. Because this court can provide no further relief, the issue is moot. *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995).

*Insufficient evidence.* Mr. Johnson makes a conclusory argument that the State had no evidence whatsoever to support his conviction for assault in the second degree. Personal restraint petitions will be dismissed "[w]here the record does not provide any facts or evidence on which to decide the issue and the petition instead relies solely on conclusory allegations." *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990). This shortcoming is a sufficient basis for rejecting the challenge.

In addition, and presuming that the basis for this argument is the same as that included in the second additional ground for review set forth in Mr. Johnson's SAG, we have already found the evidence to be sufficient.

*Ineffective assistance: trial counsel.* Finally, Mr. Johnson alleges his lawyer did not offer all the evidence that existed and could have been offered in his defense.

As explained in addressing Mr. Johnson's complaint of ineffective assistance of counsel in his SAG, a personal restraint petition is the appropriate vehicle for a challenge based on facts and evidence outside the record on appeal. But to be successful, the personal restraint petition must then *present* the facts and evidence from outside the record that support the challenge. A petitioner must support a PRP with facts or evidence on which his challenge is made and not rely solely on conclusory allegations. *Cook*, 114

15

No. 32834-1-III (consol. w/ No. 32846-5-III)
*State v. Johnson*

Wn.2d at 813-14. The evidence presented must consist of "more than speculation, conjecture, or inadmissible hearsay." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). And if a petitioner contends that an evidentiary hearing is required, he must "demonstrate that [there is] competent, admissible evidence to establish" facts that would entitle him to relief. *Id.*

Even in his PRP, Mr. Johnson provides nothing beyond his conclusory, self-serving allegations that exculpatory or impeaching police reports exist and that the victim's statement changed. Such allegations are clearly insufficient.

We affirm Mr. Johnson's conviction, dismiss his personal restraint petition, and remand for reconsideration with proper consideration of his ability to pay any discretionary LFOs imposed.

Siddoway, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

16